Frank LYON, Jr. et al *v.* WHITE RIVER-GRAND PRAIRIE IRRIGATION DISTRICT et al

83-8                                                    664 S.W.2d 441

Supreme Court of Arkansas
Opinion delivered January 30, 1984
[Rehearing denied March 12, 1984.]

*Smith, Jernigan & Smith,* by: *Robert D. Smith, III* and *H. Vann Smith,* for appellants.

*Macom, Moorhead, Green & Henry,* by: *William Moorhead,* for appellees.

JOHN D. ELDRIDGE, III, Special Justice. Pursuant to Act 114 of 1957, codified at Ark. Stat. Ann. § 21-1401, et seq. appellees filed a petition to establish a public, non-profit water distribution district to be entitled the "White River-Grand Prairie Irrigation District." Appellants own real property encompassed by the boundaries of the proposed district. The Arkansas County Circuit Court established the irrigation district on March 17, 1982, finding that the White River at or near DeValls Bluff was to be the district's water source and that, because this district will serve a purpose different from the already existing Grand Prairie Regional Water Distribution District, it did not matter that the boundaries of the two districts overlap. In so ruling, the trial court rejected appellants' arguments that Act 329 of 1949, as amended, was the proper enabling act; that the powers clause of Act 114 of 1957, as amended, did not permit the White River to be a water source for the district; that the petition for the district was amended by a report of the Arkansas Soil and Water Conservation Commission; and that the formation of the district was not in the best interest of the public. From the rulings adverse to appellants, and

because the interpretation of an act of the General Assembly is required, this appeal was brought to us.

In attacking the establishment of this district, appellants raise four issues. It is first contended that the trial court erred in holding Act 114 to be the proper vehicle under which to establish the irrigation district. Their argument basically is that the purposes clause of Act 114 does not include irrigation and instead provides that the district may be organized to acquire water for purification, treatment, and processing, which are only required when water is used for human consumption. Appellants cite *Hink* v. *Board of Directors of Beaver Water District*, 235 Ark. 107, 357 S.W.2d 271 (1962) for the proposition that Act 114 was adopted to allow the use of water in federally owned lakes only for municipal and industrial use. We did note in *Hink* that it has been the policy of the federal government to permit some part of the water impounded in federally owned lakes and reservoirs to be reserved for municipal and industrial use, and Act 114 was adopted by our legislature to take advantage of this federal policy. However, an explanation and delineation of the purposes of Act 114 was not at issue in *Hink*, and we did not decide whether municipal and industrial uses are the exclusive purposes of the act, or whether agricultural or other purposes are also authorized. We think they are.

In reaching this conclusion, we note the following statement contained in the preamble to Act 114 of 1957:

> Whereas, the Congress of the United States has announced a policy in adopting and authorizing such projects that no federal funds can be expended to provide water storage capacity for industrial, municipal *and agricultural water supply purposes* in said reservoirs until some authorized local agency shall execute to the United States a contract of assurance that such local interest will, (a) make use of said water supply and (b) pay such additional costs of said reservoir as may be allocated to water supply. (Emphasis supplied.)

We have held that the title of an act, and its preamble, may be utilized to assist in its construction. *Oliver* v. *Southern Trust Company,* 138 Ark. 381, 212 S.W. 77 (1919). In *Prewitt* v. *Warfield, County Judge,* 203 Ark. 137, 156 S.W.2d 238 (1948), we said:

> In construing statutes, it is said that the preamble usually contains the motives and inducements to the making of the act, and resort to the preamble may, therefore, be useful in ascertaining the causes which lead to the passage of the act or the mischiefs intended to be remedied thereby.,

This interpretation is further suggested by the enactment of Act 137 of 1973, by which the legislature amended section 4 of Act 114 of 1957, codified at Ark. Stat. Ann. § 21-1404 (Supp. 1983), to provide as follows:

> When there is water available for industrial, municipal or agricultural irrigation water supply purposes . . . then one hundred (100) or more qualified voters . . . may petition the Circuit Court . . . to establish a water district for the purposes hereinbefore set out.

The Arkansas Soil and Water Conservation Commission, in its Report which was required by Act 114, and also in its Amended Report, found that the purpose of the proposed district is to provide irrigation for agricultural lands within the district which "is in accord with the purposes of (the) enabling act." We think Act 114 of 1957, as amended, clearly anticipates agricultural irrigation purposes and agree with the findings of the Commission and the trial court.

Appellants next assert that the trial court erred in finding that the White River at DeValls Bluff was a proper water source for the proposed district. Before the 1973 amendment, Act 114 could only be used to take water from federal impoundments. Act 137 of 1973 amended the "purposes" section of Act 114, Ark. Stat. Ann. § 21-1403 (Supp. 1983), to provide that districts may be organized under the act to acquire water, in addition, from ". . . wells, lakes, rivers, tributaries, or streams of or bordering this

State . . ." Similar conforming changes were made in various other sections of Act 114 by the 1973 amendment to enlarge the source of water beyond federal impoundments. However, the "powers" section of the original act, Ark. Stat. Ann. § 21-1408 (Supp. 1983), was not amended specifically to give districts the authority to acquire title to water from rivers. Appellants argue that to infer such power is contrary to legislative intent and is improper. The lower court held that the plain legislative design was to permit taking water from rivers and sources other than federal impoundments and that to keep Act 137 from being meaningless the court must supply the obvious, necessary words. We agree with the trial court.

We believe this was an incomplete effort on the part of the legislature and opens the statute to construction by this Court. We note that all pertinent portions of Act 114, with the exception of the "powers" section, were amended in 1973 to broaden the authority of districts to take water from rivers. Further, the title to Act 137 provides "An Act To Provide That Regional Water Distribution Districts May Be Organized To Acquire Water From Wells, Lakes, Streams, Rivers, Tributaries, and Existing Reservoirs . . ." As stated previously, it is a proper rule of statutory construction to look to the title, as well as the preamble, in determining the meaning of the act. *Oliver* v. *Southern Trust Company, supra.*

In *Hazelrigg* v. *Board of Penitentiary Comm'rs,* 184 Ark. 154, 40 S.W.2d 998 (1931), we said:

> It is the duty of the courts to construe legislation as passed for the purpose of ascertaining the legislative intent, and to give effect thereto when the legislation is not inhibited by some constitutional restriction . . . legislative enactments are not any more than any other writings to be defeated on account of mistakes, errors, or omissions, provided the intention of the legislature can be collected from the whole statute.

Furthermore, in *Snowden* v. *Thompson,* 106 Ark. 517, 153 S.W. 823 (1913), we held:

There are undoubtedly inaccuracies and omissions which call for a construction of the statute, and it becomes our duty to determine whether the legislative intent can be gathered from the language used . . . [I]t is fairly within the limits of the rules for construction that courts can supply obvious omissions, in order to carry out the legislative intent.

We also said the following in *McDaniel* v. *Ashworth*, 137 Ark. 280, 209 S.W. 646 (1919):

When there is no way of reconciling conflicting clauses of a statute, and nothing indicating which the legislature regarded as of paramount importance, force should be given to those clauses which would make the statute in harmony with the other legislation on the same subject.

Finally, section 14 of Act 114 provides "This Act shall be construed liberally. The enumerating of any object, purpose, power, manner, method, or thing shall not be deemed to exclude like or similar objects, purposes, powers, manners, methods, or things." Accordingly, we hold that the White River is a proper water source pursuant to Act 114 of 1957, as amended.

Appellants' third and fourth points will be addressed simultaneously in that each deals with the effect to be given to the Report of the Arkansas Soil and Water Conservation Commission, filed in the lower court August 28, 1981, and the Amendment to Separate Answer of Arkansas Soil and Water Conservation Commission executed by the Commission's attorney and filed March 17, 1982. Appellants argue that the Report and Amendment to Separate Answer mandated the exclusion of a large portion of the proposed district which overlapped with an existing water distribution district, and further required a feasibility study to be conducted to determine if the establishment of the proposed district is in the best interest of the residents.

The applicable statute on this issue, Ark. Stat. Ann. § 21-1405 (Supp. 1983), provides, in pertinent part, as follows:

> Upon the filing of said petition . . . the Commission shall institute an investigation of the proposed district, its territory and purposes, and shall . . . transmit a written report of its findings on the petition to the Clerk of said Circuit Court. The report of the Commission shall include, but not be limited to: . . .(4) Any conditions, revisions (including revisions of area) or limitations which the Commission deems necessary to the organization of the water district, the same to be stated as changes in the petition, which changes shall thereupon become a part of the petition and be deemed effective without another amendment thereto.

The quoted section expressly and unequivocally provides that the report of the Arkansas Soil and Water Conservation Commission must be accepted as a part of the petition, and the Circuit Court has no discretion in the matter. Accordingly, had the Commission mandated in its report that the land overlapped by the existing water distribution district should be removed from the proposed district, and had the Commission in its report required the feasibility study to be conducted prior to the establishment of the district, these conditions and revisions would have become a part of the petition without further amendment. The problem is that the Report of the Commission did not require the feasibility study or the removal of the overlapping area. The Report filed August 28, 1981 cast these matters in terms of recommendations to the trial court. The Amendment to Separate Answer, filed March 17, 1982, did mandate these and other changes in the petition, but this document was executed by the attorney for the Commission, not the Commission Chairman and Executive Director. The issue then becomes the effect, if any, to be given to the Amendment to Separate Answer executed by counsel. It appears to be a matter of first impression in Arkansas.

Initially, we note that the quoted section of Ark. Stat. Ann. § 21-1405 requires that *the Commission* institute an investigation and transmit a written report of *its* findings, which establishes *prima facie* that the Commission and only the Commission is authorized to prepare the report. In the case of *Alto-Rese Park Cemetery Association* v. *Pennsyl-*

*vania Human Relations Commission,* 298 A.2d 619 (Pa. Commw. 1972), the Pennsylvania court found that an attorney had no power to usurp the duties of the Human Relations Commission by amending its original order. The court held that the Comission derives its powers from a statute (as does the Commission in the instant case) and said the following:

> [W]e recognize that the policy of the law is to favor the compromise of a disputed claim but it is axiomatic that the plain dictates of a duly enacted statute cannot be ignored. This is so not withstanding the industry, understanding, and good intention of the knowledge-able counsel for the Commission.

The court then set out the applicable statute prescribing the procedure to be followed by the Commission in performing official business, and said:

> Thus a legislatively prescribed procedure must be followed before any binding, official action of the Commission is effected. Counsel for the Commission may enter into negotiations toward a compromise, but he must first submit the proposed compromise to the Commission so that it can discharge its prescribed duty. He cannot unilaterally bind the Commission. Were we to countenance such a procedure, it would simply mean that orders of the Commission may issue which have not been the subject of legislatively ordained deliberation and judgment by it. We hold that the legislature never intended such a substitution . . . This court has held that before any agreement entered into by counsel is deemed to be binding, it must be *clearly* shown that the attorney had the authority to enter into such agreement . . . These sections merely provide for legal aid to the Commission and repre-sentation in litigation. It does not authorize attorneys to substitute their judgment for that of their clients. Independent agencies rely on counsel but they are ordained to exercise independent judgments, else they serve no purpose in being.

This situation is analogous to the authority of an attorney to compromise a claim on behalf of his client. In *Walker* v. *Stephens*, 3 Ark. App. 205, 626 S.W.2d 200 (1981), the Court of Appeals discussed the implied authority of an attorney and stated:

> It is well settled that an attorney's contract of employ-ment implies that he is authorized to take those procedural steps deemed by him to be necessary and proper in the conduct of the litigation whether in pursuit or defense of the claim. His actions in those matters, in the absence of fraud, are regarded as the acts of his client who is bound by those actions, but the mere fact that counsel is retained does not, in and of itself, carry an implication of authority to compromise his client's claim and to hold otherwise would vest the attorney with far more power than his retainer requires or implies.

Certainly the actions of the attorney for the Commission in this case in interpreting and revising the report of the Commission, and possibly altering its legal effect pursuant to the statute, are of a substantive nature. It is clear to us that the Amendment to Separate Answer filed by the attorney should not be considered the report of the Commission. To that effect was his own testimony . . . "It's an amended answer with the report and a strip map attached — as attachments only. It's no third report. The report issued by the Commission still stands and always has stood. . . . There is only one report that was issued.

The Amendment to Separate Answer does, however, cast doubt upon the effect intended by the Report of the Commission relating to conditions, revisions, or limitations in the petition for establishment of the district. Accordingly, this cause is remanded to the Circuit Court to receive the findings of the Arkansas Soil and Water Conservation Commission, particularly with reference to any conditions, revisions or limitations it deems necessary to the formation of the district; to incorporate these in the petition for establishment of the district as required by the enabling statute; and to proceed in accordance with such findings.

Neither party questioned the validity of Ark. Stat. Ann. § 21-1405 et seq. which permits the Arkansas Soil and Water Conservation Commission the right to decide to change a petition without review. The parties are not precluded from questioning the validity of this law on remand.

Affirmed in part, reversed in part, and remanded for actions consistent with this opinion.

Special Justice LEROY AUTREY joins in this opinion.

ADKISSON, C.J., and GEORGE ROSE SMITH and HAYS, JJ., not participating.

HICKMAN, J., concurs.

DARRELL HICKMAN, Justice, concurring. This case vividly points out the lack of comprehensive, well thought out legislation concerning water rights in Arkansas — rights which affect us all, not just cities and farmers that irrigate. A piece-meal approach, which is what presently exists, permitting overlapping districts, failing to deal squarely with competing interests for water, can only add to the problem, not solve it. Water is one of Arkansas's greatest natural resources, and we should not allow it to be wasted or destroyed because of a lack of foresight or the will to keep what we have.