The CITY OF FORT SMITH, Arkansas *v.*
The RIVER VALLEY REGIONAL WATER DISTRICT

00-1136                                             37 S.W.3d 631

Supreme Court of Arkansas
Opinion delivered March 1, 2001

*Daily & Woods, P.L.L.C.,* by: *Jerry L. Canfield,* for appellant.

*Williams & Anderson, LLP,* by: *Peter G. Kumpe* and *Rhonda K. Wood,* for appellee.

JIM HANNAH, Justice. The Crawford County Circuit Court entered an order establishing The River Valley Regional Water District ("River Valley"). The City of Fort Smith ("the City") appeals the trial court's decision challenging the sufficiency of the petition under Ark. Code Ann. §§ 14-116-101—14-116-202 and challenging the trial court's determination that the petitioners demonstrated a necessity for the establishment of a regional water district.

*Facts*

On March 20, 2000, approximately 450 residents of Crawford County and the City of Barling, Sebastian County, petitioned the Crawford County Circuit Court to establish a regional water district pursuant to the Regional Water Distribution District Act ("the Act"), Ark. Code Ann. § 14-116-101—14-116-801 (Repl. 1998 and Supp. 1999). The district would embrace all of Crawford County and the City of Barling, Arkansas.

In accordance with Ark. Code Ann. § 14-116-204,(   ) the circuit court clerk prepared a certified copy of the petition and transmitted it to the Arkansas Soil and Water Conservation Commission ("the Commission") for investigation and review. The Commission completed its investigation and review and filed its report with the Crawford County Circuit Court on May 26, 2000.

On May 30, 2000, the City of Fort Smith, an owner of real property within the boundaries of the proposed water district, filed a response to the petition, asserting that the water district should not be formed because the proposed named water source, the Pine Mountain Project, is not a valid source, and there had been no showing of necessity for the formation of the water district. Furthermore, the City alleged that the Act was not applicable to political subdivisions of the state, such as municipalities.

The trial court held a hearing on June 14, 2000, at which one witness testified and several members of the public made statements. The witness, Harry L. Short, testified on behalf of the petitioners. Short, the manager of Van Buren Municipal Utilities, testified that surface water supplies in Arkansas are "excellent," and that shortages in water supplies in regional areas were being caused by the lack of facilities and strategic planning. He stated that the City's planning would result in a possible water-supply deficit by 2005, and that the district's inhabitants already were experiencing water volume restrictions. Short testified that while the City had planned to expand its water resources through the proposed expansion of the existing Lake Fort Smith project, this plan only considered the projected water use through the year 2050 with an increase of production of twenty-five million gallons of water per day. Short indicated that with the continued steady population growth of Crawford County and the surrounding areas, such planning could result in a lack of sufficient water. However, the proposed water district would be able to produce a possible sixty-five million gallons of water per day based on studies of several proposed sites in the region. Short testified that the proposed water district planned to initiate studies of several sites, including the Lee Creek and Pine Mountain sites, to determine which site would best accomplish the needs of the proposed district. On cross-examination, Short conceded that the proposed water district did not have a definite plan in place, but only planned to study several sites. He stated, "Other than the goal of looking at Pine Mountain, there is no preliminary engineering plan at this time. However, it is our intention that once we have been formed and can pursue this as a legal entity, we will hire a consulting engineer and proceed with the preliminary engineering process." Later, Short testified that once the planning was

completed, the new water district would have to return to the Commission and to the court prior to approval of any project.

At the close of the hearing, the trial court issued a ruling from the bench finding that the focus should be on the long-range planning for water, and that fifty years in the future is not that long for the growth and planning of water use. The court noted that it found a need for the new water district and that its creation was in the best interest of the citizens to at least conduct studies to determine whether another source could be developed to enhance the resources of the region. The court also specifically excluded Fort Smith and its property from the new water district, and urged cooperation among the districts. The trial court's order was reduced to a written judgment, which was filed on June 22, 2000. The City filed its notice of appeal on July 17, 2000.

## Standard of Review

█ █ Our standard of review of a circuit court's finding following a bench trial is whether that finding was clearly erroneous. *Burke v. Elmore*, 341 Ark. 129, 14 S.W.3d 872 (2000); *City of Pocahontas v. Huddleston*, 309 Ark. 353, 831 S.W.2d 138 (1992). We review issues of statutory construction de novo, as it is for this court to decide what a statute means. *Hodges v. Huckabee*, 338 Ark. 454, 995 S.W.2d 341 (1999).

## The Regional Water Distribution District Act

This case is governed by Act 114 of 1957, the Regional Water Distribution District Act. The Act, codified at Ark. Code Ann. §§ 14-116-101—14-116-801, governs the creation and operation of regional water districts in Arkansas.

The legislature intended the Act to be construed liberally, and that the "enumerating of any object, purpose, power, manner, method, or thing shall not be deemed to exclude like or similar objects, purposes, powers, manners, methods, or things." Ark. Code Ann. § 14-116-105. Ark. Code Ann. § 14-116-102 states as follows:

> Public nonprofit regional water distribution districts may be organized under this chapter for any one (1) or more of the following purposes:

(1) Acquisition of water from wells, lakes, rivers, tributaries, or streams of or bordering this state or from existing reservoirs heretofore created by the construction of dams by or under the direction and supervision of the United States Army Corps of Engineers;

(2) Acquisition of water, water storage facilities, and the storage of the water in reservoirs created by the construction of multipurpose dams by or under the direction and supervision of the United States Army Corps of Engineers, or by the water district with federal financial or other assistance furnished by the United States Secretary of Agriculture under the provisions of the Watershed Protection and Flood Prevention Act or any other federal law;

(3) Purification, treatment, and processing of the water;

(4) Furnishing the water to persons desiring it;

(5) Assisting in the installation and operation of the water and transportation facilities of persons who are furnished water by the water district and the acquisition, supply, or installation of equipment necessary therefor;

(6) Transportation and delivery of the water to persons furnished it by the water district.

The City raises only two main issues. First, the City argues that the court must determine whether the trial court erred in granting the petition to form the water district based on the sufficiency of the language of the petition and whether the Act is applicable to municipalities. Inherent in this first issue is also the question of whether the statutory language is broad enough to encompass a "planning" stage within the "acquisition" language in the statutes. Second, the City argues that the court must determine whether the trial court erred in finding that there was a necessity to form a new water district to conduct a study of potential water sources.

### Validity of the Petition

The City argues that the petition failed to identify a particular project to acquire water from one or more of the sources provided in Ark. Code Ann. § 14-116-201. During the hearing, Short testified on behalf of the petitioners about concerns regarding the present water supply within the proposed water district, and that the proposed water district was looking at several projects including

the Pine Mountain project that would involve damming Lee Creek and the Arkansas River. Short admitted that the petitioners did not have a preliminary engineering report and that they were waiting on the establishment of the district before they began that process. The City relies on this testimony for the argument that the district was formed prematurely. Specifically, the City contends that a water district may not be created for the purpose of planning without an identified project that could be evaluated by the Commission and acquired by the district.

■ Arkansas Code Annotated Section 14-116-102(1) provides in part that a public nonprofit regional water distribution district may be organized for the purpose of "[a]cquisition of water from wells, lakes, rivers, tributaries, or streams of or bordering this state or from existing reservoirs heretofore created by the construction of dams by or under the direction and supervision of the United States Army Corps of Engineers[.]" Ark. Code Ann. § 14-116-201 provides that a petition for establishing a water district may be applied for by at least 100 registered voters living within the proposed district. Ark. Code Ann. § 14-116-201 states in pertinent part:

> When there is water available for industrial, municipal, or agricultural irrigation water supply purposes from wells, lakes, rivers, tributaries, or streams of this state or bordering on this state or from reservoirs heretofore created by the construction of multipurpose dams by or under the direction and supervision of the United States Army Corps of Engineers on any of the rivers, tributaries, or streams of or bordering on this state, or when the Congress of the United States of America has enacted a law authorizing the construction of a reservoir by or under the supervision and direction of the United States Army Corps of Engineers on any of the rivers, tributaries, or streams of or bordering on this state, or when a proposed reservoir on any stream of this state is to be constructed by a water district established under this chapter with federal or other assistance furnished by the United States Secretary of Agriculture under the provisions of the Watershed Protection and Flood Prevention Act or any other federal law....

This section provides four alternative water sources including 1) a reservoir constructed by the Army Corps of Engineers; 2) construction of a reservoir enabled by a law of Congress; 3) a proposed reservoir to be constructed with federal funds; or 4) water available from any wells, lakes, rivers, tributaries, or streams in this state or bordering this state. The statute only requires that there be water available from one of these sources.

The requirements for the petition's contents are noted in Ark. Code Ann. § 14-116-202, which states:

> The petition shall contain:
>
> (1) An accurate description of the territory which it is proposed shall be embraced within the water district, and a map of the territory shall be attached to the petition as an exhibit thereto;
>
> (2) A brief and concise statement describing the water source, whether it is wells, lakes, streams, a reservoir heretofore created by the construction of a dam, or a proposed reservoir authorized by the Congress of the United States of America or a proposed reservoir to be constructed by the water district with federal financial or other assistance furnished by the United States Secretary of Agriculture under the provisions of the Watershed Protection and Flood Prevention Act or any other federal law;
>
> (3) A brief and concise statement showing the necessity for forming and operating the proposed water district, describing the benefits to be received therefrom by the residents and property owners in the territory proposed to be embraced in the water district, and if the water district proposes to use project improvement plans and assessments, a statement that such petitioners are aware of the power of the district under this chapter to levy taxes;
>
> (4) The proposed name for the water district;
>
> (5) The proposed location of the principal office of the water district;
>
> (6) Other and additional information appropriate and useful in support.

Here, the petition reflects that the proposed water district shall be all of Crawford County and the City of Barling, located in Sebastian County. A map of the territory was attached to the petition. The petition also contains a brief description of the proposed water source, stating:

> The proposed source of water will be created by the construction of a dam on Lee Creek north of the City of Van Buren, Crawford County, Arkansas, or of an alternative site that may be selected, as authorized by the Congress of the United States of America by the

Flood Control Act of 1965 (Title II, Public Law 89-298) substantially in accordance with the recommendations of the Chief of Engineers in House Document no. 270, 89th Congress.

The petition further contained a brief statement showing the necessity for forming the district, the proposed name of the district, and the proposed location of the district's office.

■ The petition is sufficient under Ark. Code Ann. § 14-116-202 given the mandate in Ark. Code Ann. § 14-116-105 that the Act "shall be construed liberally." That section also provides that any object or purpose specifically enumerated in the Act "shall not be deemed to exclude like or similar" objects or purposes. In other words, a stated purpose for establishing a water district need not be one of the purposes enumerated in the Act, so long as that purpose is similar to those enumerated purposes.

Although the statutes do not include language that a district may be preformed for the purpose of planning a water project, planning is an inherent necessity for acquiring water for the district's inhabitants. The overall purpose for the creation of the water district is to ultimately provide the inhabitants of the water district a viable water source independent of the City.

■ The Act does not require a proposed district to have a concrete plan identifying the particular project on a particular water source that will be used to distribute water to the inhabitants of the proposed district. The Act only requires that there be a water source from which such distribution might be made. In this case, the petition named Lee Creek as a source of available water. Testimony at the hearing also named the Arkansas River as a possible source.

■ The Act should be read as authorizing the formation of a district that will then commission a study of the feasibility of creating a particular reservoir of water. It is impractical to require individual inhabitants of a proposed water district to undertake the expense of an engineering survey to determine potential water sources. Because the Act requires liberal interpretation and permits the formation of a district for purposes similar to those enumerated in the Act, this court holds that the Act permits the formation of a district for the purpose of evaluating options for possible water-supply sources.

## The Commission's Report

The City next argues that the petitioner's lack of an identified project made it impossible for the district to gain "approval" with the Arkansas Soil and Water Conservation Commission. The petition, once filed with the court, must then be forwarded to the Commission for review pursuant to Ark. Code Ann. § 14-116-204, which states:

(a) Upon the filing of the petition in the office of the circuit clerk for the county or any one of the counties where the reservoir or other water source as referred to in 14-116-102(1) is located or to be located, in whole or in part, the clerk shall prepare a certified copy of the petition and transmit the copy to the commission within five (5) days from the date of the filing of the petition.

(b) Upon receipt of the certified copy, the commission shall institute an investigation of the proposed district and its territory and purposes. The commission shall, within thirty (30) days after receipt of the copy, transmit a written report of its findings on the petition to the clerk of the circuit court.

(c) The report of the commission shall include, but not be limited to:

(1) A finding as to how the proposed boundaries of the water district conflict with the boundaries of any existing water district of which the commission may have supervisory jurisdiction;

(2) A finding as to whether the statement of purposes contained in the petition conforms with the intent and purposes of this chapter as applied to the area proposed to be included within the boundaries of the water district;

(3) A finding as to whether the organization of the proposed water district would promote the general welfare and be conducive to the purposes of this chapter;

(4) Any conditions, revisions, including revisions of area, or limitations which the commission deems necessary to the organization of the water district, the conditions, revisions, or limitations to be stated as changes in the petition. These changes shall thereupon become a part of the petition and be deemed effective without another amendment thereto.

Here, the Commission investigated and filed its report making findings in each of the four enumerated categories in Ark. Code Ann. § 14-116-204(c). The report also contained a caveat, which stated:

> There is no preliminary engineering plan, so the Commission is limited in its ability to review the proposal. In the absence of concrete plans, the Commission recommends that the issues set forth below be resolved before the court acts on the petition.

Those issues were 1) whether the proposed district is necessary to provide future water needed in the proposed area; 2) whether water supplied by Fort Smith is and will be adequate to serve the area; and 3) whether, as a current supplier of water to the area within the boundaries of the proposed district, Fort Smith should be an active participant in determining whether the district should be formed.

■ ■ According to *Lyon v. White River-Grand Prairie Irr. Dist.*, 281 Ark. 286, 293, 664 S.W.2d 441 (1984), if the Commission mandates certain requirements, the trial court has no alternative but to comply. However, if the Commission merely recommends certain actions to the trial court, no such obligation exists. *Id.* Here, the Commission's report reflects recommendations of issues to be resolved before acting on the petition. Recommendations are not the same as mandates. Thus, the trial court did not have to resolve the issues prior to ruling on the petition. The recommendations made by the Commission were addressed by the trial court, and the court made the suggested findings and excluded from the district any property owned by the City of Fort Smith.

■ The Commission's report did contain a statement that appears to be mandatory: "The effect of the proposed district on Fort Smith's long-term plans to increase its water supply capacity through enlargement of Lake Fort Smith must be determined." This statement is not contained in the same paragraph as those issues the Commission recommended to be resolved prior to the petition being granted. In compliance with this mandate, the trial court considered the evidence presented at the hearing regarding the effect that the formation of the district would have on the Lake Fort Smith expansion project. The order reflects the trial court's finding that "there was presented no substantial evidence that creation of the proposed district will interfere with Fort Smith's plans to increase its water supply capacity through enlargement of Lake Fort Smith." This finding is not clearly erroneous.

It should be noted that whenever the district attempts to take action on a particular project, Ark. Code Ann. § 14-116-501(d) requires a water district to obtain the Commission's approval of any proposed improvement plan. In addition, the district also must obtain the trial court's approval of any proposed improvement plan. Ark. Code Ann. § 14-116-502.

### Applicability of Ark. Code Ann. § 14-116-107

Next, the City argues that the petition and court order are in conflict with Ark. Code Ann. § 14-116-107, which states:

> The provisions of § 14-116-101 et seq., the Regional Water Distribution District Act, as now or hereafter amended, shall not be applicable to agencies of the State of Arkansas or of political subdivisions of the state, nor to lands owned by such agencies.

The City contends that this statute means that a district created pursuant to the Act may not preempt governmental entities from performing their governmental functions. The City argues that municipalities may not be contained within regional water districts.

River Valley argues that this statute means that the State and its political subdivisions are not required to follow the dictates of the Act before they may undertake to furnish water to their citizens. In other words, the State, cities, and counties may furnish water to their citizens without having to form a regional water district under the Act.

The City is wrong in its argument as to the meaning of Ark. Code Ann. § 14-116-107. It is clear on its face that Ark. Code Ann. § 14-116-107 merely provides that the State and its political subdivisions do not have to seek formation of a regional water district in order to furnish water to their respective citizens. The purpose of the Act is to supplement, not to preempt, governmental entities from delivering water to the citizens. The Act does not prohibit municipalities from being contained within the boundaries of regional water districts.

Pursuant to the Commission's report, the trial court excluded from the district any property owned by the City. The trial court's order provided as follows:

2. Such regional water distribution district be and the same is hereby made subject to all of the terms and provisions of the aforesaid act, viz, The Regional Water Distribution Act.

Before the district can take action on any project, Ark. Code Ann. § 14-116-501(d) requires a water district to obtain the Commission's approval of any proposed improvement plan. Ark. Code Ann. § 14-116-502 requires the district also to obtain the trial court's approval of any proposed improvement plan. Thus, the trial court retains jurisdiction to address issues that might arise in the future including, but not limited to, municipal boundary issues.

### Compliance of Circuit Court Order with the Act

The City next argues that the absence of a proposed water supply project makes it impossible for the court's order to comply with the Act. Specifically, the City argues that Ark. Code Ann. § 14-116-206(b) requires the court to "recite the matters" the water district has control over. Ark. Code Ann. § 14-116-206(b) states in part:

(b) The order establishing the water district shall empower the water district, to the full extent that the State of Arkansas can grant that right, the right to acquire absolute title to and use of water stored in any water source as referred to in 14-116-102 or in the reservoir created, or to be created, by the construction of the dam by, or under the direction and supervision of, the United States Army Corps of Engineers or by the water district with federal financial or other assistance furnished by the United States Secretary of Agriculture under the provisions of the Watershed Protection and Flood Prevention Act, or any other federal law. The water district shall by the order be empowered to enter into contracts of assurances with the United states of America for the storage, procurement, or removal of the water from the reservoir or other such water source. The order establishing the water district shall have all the force and effect of a judgment.

Under this statute, the City contends that the trial court was specifically supposed to rule that the district had the power to acquire the specific land for a specific project and that the district had the power to contract with the United States government. In reading this statute, however, it is clear that there is no such requirement that the trial court must make that finding. Instead, by virtue of becoming a water district by order of the court, the district is empowered

to acquire land for the water source, contract with entities, and perform its duties pursuant to the Act. *See* Ark. Code Ann. §§ 14-116-401—14-116-407.

### Necessity to Form the River Valley Regional Water District

Finally, the City argues that the trial court clearly erred in finding a necessity to form the new water district to conduct a study of potential water sources. Again, in Ark. Code Ann. § 14-116-202(3), the petition presented to the court must contain a "brief and concise statement showing the necessity for forming and operating the proposed water district." The petitioners complied with this requirement in the petition they filed. Furthermore, Ark. Code Ann. § 14-116-206(a) included the requirement that the trial court find that the proposed water district is "in the best interest of the person residing or owning lands within the boundaries of the proposed water district...." In its written order, the trial court found the following based on the petition and the evidence presented:

\*\*\*

4. It is in the best interests of the persons residing or owning land within the boundaries of the proposed district that the same be established under the terms of The Regional Water Distribution Act, Act 114, Ark. Acts. Of 1957, as amended (Arkansas Code Annotated § 14-116-101 et seq.

5. The proposed district is necessary to provide for future water needs in the proposed geographic region.

6. There is substantial uncertainty that water supplied by Fort Smith is and will be adequate to meet long-term future needs in the area.

7. There was presented no substantial evidence that creation of the proposed district will interfere with Fort Smith's plans to increase its water supply capacity through enlargement of Lake Fort Smith.

***

The City argues that there is no need to create a regional water district to study potential water sources at this time because such studies have already been done or can be accomplished by an inter-local government agreement. The City urges that because no specific plan is in place, there is no necessity to conduct another study. In addition, the City argues that there will be no need for the water project until the year 2050; therefore, there is no necessity today.

The trial court found that the district was necessary to provide for future water needs in the proposed geographic region, and that it is in the best interest of the people residing within the district that the district be created. The trial court further found that there is substantial uncertainty that water supplied by Fort Smith is and will be adequate to meet long-term future needs in the area. We cannot say that the trial court was clearly erroneous in finding that the creation of the water district was necessary and that it was in the best interest of the people residing within the district.

Affirmed.