ARKANSAS SOIL and WATER CONSERVATION COMMISSION, *Appellant v.* CITY of BENTONVILLE, *Appellee*; City of Centerton, *Intervenor*

02-658 92 S.W.3d 47

Supreme Court of Arkansas
Opinion delivered December 12, 2002

292

*Mark Pryor*, Att'y Gen., by: *Edward C. Swaim*, Ass't Att'y Gen., and *Warren T. Readnour*, Ass't Att'y Gen., for appellant.

*Camille Steadman Thompson*, Staff Att'y, for appellee City of Bentonville.

*Howard L. Slinkard, P.A.*, by: *Howard L. Slinkard* and *Pat Moran*, for intervenor City of Centerton.

ANNABELLE CLINTON IMBER, Justice. This case arises from a decision by the Arkansas Soil and Water Conservation Commission (ASWCC) to approve a water project submit-

ted by the City of Centerton that included a portion of the City of Bentonville's five-mile extraterritorial planning area. ASWCC argues on appeal that it acted within its statutory authority in approving Centerton's water project. We agree and uphold ASWCC's decision. Accordingly, we reverse the circuit court's order and remand with directions to reinstate ASWCC's decision.

In early 2000, the Centerton Water and Sewer Commission submitted its water distribution project to ASWCC for approval. The proposed project included areas surrounding Centerton to the north, south, and west, a portion of which lies within Bentonville's five-mile extraterritorial planning area. ASWCC held public hearings on Centerton's water project application. Several residents in the proposed service area testified in favor of the project, and letters of endorsement were made a part of the record. Jerry Martin, an engineer with Engineering Services, Inc., testified on behalf of Centerton that the proposed water project would cost customers an additional $4.30 per month and would benefit existing customers by eliminating dead-end areas. He estimated the construction costs at $2.2 million, including a 10% contingency fee and miscellaneous costs, and explained that the costs were based on similar projects. The project would take about a year-and-a-half to two years to complete. On cross-examination, he confirmed that the Preliminary Engineering Report (PER) was prepared without a survey of the residents of the area, which is not unusual. The potential customer base was determined by doing a "house count" in the proposed project's service area. Britt Vance, public works director for Bentonville, testified that he believed the project was substantially underbid and would actually cost over $3.2 million. Mr. Martin responded by testifying that Mr. Vance's estimates were very high and out of line with bids he had recently received on a similar project. A resident in the area testified that he and 300 other residents did not want to pay for the water service. An analysis submitted by Centerton estimated that the proposed project would improve the water flow available for fire fighting.

In July 2000, the director of ASWCC approved Centerton's proposed water project, albeit with certain exceptions that allowed Bentonville to serve customers within 300 feet of its existing lines. In April 2001, the full commission adopted the director's order but excluded any areas that Bentonville annexed prior to March 15, 2001, and clarified that water would be supplied by the Benton/Washington County Water Association (Two-Ton) regional water system. Bentonville then appealed to the Benton County Circuit Court. During a hearing before the circuit court, ASWCC pointed out that Bentonville had not submitted a water project for the area, and that ASWCC ruled on the only project before it. The circuit court adopted ASWCC's findings of fact, conclusions of law, and order except the court ruled that ASWCC exceeded its statutory authority by extending Centerton's water service area into Bentonville's extraterritorial planning area. ASWCC filed this appeal challenging the circuit court's decision. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(6) (2002). ASWCC maintains it did not exceed its statutory authority by approving Centerton's water project and that its order is supported by substantial evidence and is not arbitrary, capricious, or characterized by an abuse of discretion. On the other hand, Bentonville claims ASWCC exceeded the scope of its statutory authority. Bentonville also suggests that the decision by ASWCC should not be upheld because: (1) it is based on a faulty procedure whereby ASWCC modified Centerton's water project; (2) the decision is arbitrary; and (3) the decision is not supported by substantial evidence.

### Standard of Review

■ ■ On appeal from a circuit court's review of a state agency's decision, our review is limited in scope and is directed not to the decision of the circuit court but to whether the decision of the administrative agency is supported by substantial evidence. *Arkansas Professional Bail Bondsman v. Oudin*, 348 Ark. 48, 69 S.W.3d 855 (2002;) *Arkansas Contr. Lic. Bd. v. Pegasus Renovation Co.*, 347 Ark. 320, 64 S.W.3d 241 (2001); *Tomerlin v. Nickolich*, 342 Ark. 325, 27 S.W.3d 746 (2000). We review the entire

record in making that determination. *Arkansas Professional Bail Bondsman v. Oudin, supra; Arkansas Alcoholic Beverage Control v. Muncrief,* 308 Ark. 373, 825 S.W.2d 816 (1992). We have recognized that "administrative agencies are better equipped than courts, by specialization, insight through experience, and more flexible procedures to determine and analyze underlying legal issues affecting their agencies, and this recognition accounts for the limited scope of judicial review of administrative action and the refusal of the court to substitute its judgment and discretion for that of the administrative agency." *Arkansas Professional Bail Bondsman v. Oudin,* 348 Ark. at 53, 69 S.W.3d at 858.

█ Arkansas Code Annotated § 25-15-212(h) provides that this court may reverse or modify the Board's decision

> if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the agency's statutory authority;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error or law;
>
> (5) Not supported by substantial evidence of record; or
>
> (6) Arbitrary, capricious, or characterized by abuse of discretion.

Ark. Code Ann. § 25-15-212(h) (Supp. 2001). In making this determination, we review the entire record and give the evidence its strongest probative force in favor of the agency's ruling. *Arkansas Professional Bail Bondsman v. Oudin, supra.* "[B]etween two fairly conflicting views, even if the reviewing court might have made a different choice, the board's choice must not be displaced." *Arkansas Contr. Lic. Bd. v. Pegasus Renovation Co.,* 347 Ark. at 327, 64 S.W.3d at 245; *Jackson v. Arkansas Racing Comm'n,* 343 Ark. 307, 34 S.W.3d 740 (2001). These standards have been applied to ASWCC decisions. *City of Benton v. Arkansas Soil & Water Conservation Commission,* 345 Ark. 249, 45 S.W.3d 805 (2001).

*I. ASWCC's Statutory Authority*

Resolution of the conflict between Bentonville and ASWCC requires this court to construe two statutes, one granting municipalities exclusive planning jurisdiction over a five-mile area surrounding the city and the other statute empowering ASWCC to approve all water projects. We first note that municipal corporations are creatures of the legislature and as such have only the power bestowed upon them by statute or the Arkansas Constitution. *Stilley v. Henson*, 342 Ark. 346, 28 S.W.3d 274 (2000). ASWCC is also a creature of the legislature, and its power and authority is limited to that which the legislature confers upon it. *Arkansas County v. Desha County*, 342 Ark. 135, 27 S.W.3d 379 (2000). The basic rule of statutory construction is to give effect to the intent of the legislature by giving words their usual and ordinary meaning. *Id.* Where the statutes are unambiguous, we construe them by looking to all laws on the subject, viewing them as a single system, and giving effect to the general purpose of the system. *Id.* We also recognize that "the manner in which a law has been interpreted by executive and administrative officers is to be given consideration and will not be disregarded unless it is clearly wrong." *Cave City Nursing Home, Inc. v. Arkansas Dept. of Human Services*, 351 Ark. 13, 22, 89 S.W.3d 884.

With these standards in mind, we turn to the statute empowering ASWCC to approve water projects. Arkansas Code Annotated § 15-22-503 (Repl. 2000) sets out the broad powers granted to ASWCC by the General Assembly:

> **15-22-503. Arkansas Water Plan.**
>
> (a) Under such rules and regulations as it may adopt, the Arkansas Soil and Water Conservation Commission is charged with the duty of preparing, developing, formulating, and engaging in a comprehensive program for the orderly development and management of the state's water and related land resources, to be referred to as the Arkansas Water Plan.
>
> (b) The commission shall be governed in its preparation of the plan by a regard for the public interest of the entire state. It shall direct its efforts to protect the water resources of the state, including boundary waters, against unwarranted encroachments

by other states and the United States upon its sovereignty with respect thereto. Any attempt to transport or export any of such waters against the best interests of the State of Arkansas and its inhabitants shall be strongly opposed.

(c) The plan shall give due consideration to existing water rights of the state and its inhabitants and shall take into account modes and procedures for the equitable adjustment of individual water rights affected by the implementation of the plan. *The Arkansas Water Plan shall be the state policy for the development of water and related land resources in this state* and shall, from time to time, be altered, amended, or repealed to the extent necessary for the proper administration of the state's water resources.

(d) All state agencies, commissions, and political subdivisions shall take the Arkansas Water Plan into consideration in all matters pertaining to the discharge of their respective duties and responsibilities as they may affect the comprehensive Arkansas Water Plan, but nothing in the Arkansas Water Plan shall be construed as to impair any water right existing under the laws of this state.

(e) *No political subdivision or agency of the state shall spend any state funds on or engage in any water development project*, excluding any project in which game protection funds or federal or state outdoor recreation assistance grant funds are to be spent provided such project will not diminish the benefits of any existing water development project, *until a preliminary survey and report therefor, which sets forth the purpose of the project, the benefits to be expected, the general nature of the works of improvement, the necessity, feasibility, and the estimated cost thereof, is filed with the commission and is approved by the commission to be in compliance with the Arkansas Water Plan.* Upon approval of the report, no political subdivision nor agency board or commission thereof filing the report, or designated by the commission as having responsibility for constructing, operating, managing, and maintaining the improvement, shall be dissolved, merged, abolished, or otherwise changed during the life of the water development project without prior approval of the commission.

Ark. Code Ann. § 15-22-503 (Repl. 2000) (emphasis added).

■ ■ Municipalities are generally required to submit their water development proposals to ASWCC for approval as being in compliance with the Arkansas Water Plan. *See, e.g., City of Benton v. Arkansas Soil & Water Conservation Comm'n*, 345 Ark.

249, 45 S.W.3d 805 (2001). Municipalities may be included within the boundaries of Regional Water Distribution Districts. *City of Fort Smith v. River Valley Regional Water Dist.*, 344 Ark. 57, 37 S.W.3d 631 (2001); Ark. Code Ann. § 14-116-107 (Repl. 1998). Regional Water Districts are required to submit project proposals to ASWCC in order to assure compliance with the Arkansas Water Plan. Ark. Code Ann. § 14-116-402(b) (Supp. 2001). ASWCC is charged with the responsibility of developing the water plan that "shall be the state policy for the development of water and related land resources in this state. . . ." Ark. Code Ann. § 15-22-503(c). Section 15-22-504 even requires that the plan be made generally available "to ensure that the provisions of this subchapter are complied with concerning water and resource planning and development." Ark. Code Ann. § 15-22-504(b) (Repl. 2000).

Bentonville contends that section 14-56-413 grants it exclusive jurisdiction over the five-mile extraterritorial area surrounding the city limits. "The territorial jurisdiction of the legislative body of the city having a planning commission, for the purpose of this subchapter, shall be exclusive and shall include all land lying within five (5) miles of the corporate limits." Ark. Code Ann. §14-56-413(a)(1)(A) (Repl. 1998). Bentonville also claims that this exclusive planning jurisdiction trumps ASWCC's authority under section 15-22-503 such that the city has been granted the exclusive right to provide utilities to residents in its five-mile extraterritorial planning area.

 Bentonville overstates the power granted to them by section 14-56-413. First, section 15-22-503(e) clearly grants ASWCC power over other political subdivisions, such as municipalities, to approve any water development project for compliance with the state water plan. Ark. Code Ann. § 15-22-503(e). Our case law provides that a Regional Water District, whose water projects also require ASWCC approval, can include municipalities. *City of Fort Smith v. River Valley Regional Water Dist., supra.* Moreover, cities cannot spend state funds on or engage in any water development project until the project is approved by ASWCC.

Ark. Code Ann. § 15-22-503(e); *City of Benton v. ASWCC, supra.* A municipality clearly does not have absolute power to control water projects within its own boundaries, much less within its five-mile extraterritorial planning area.

Statutes relating to the same subject are said to be *in pari materia* and should be read in a harmonious manner, if possible. *R.N. v. J.M.,* 347 Ark. 203, 61 S.W.3d 149 (2001); *Minnesota Mining & Mfg. v. Baker,* 337 Ark. 94, 989 S.W.2d 151 (1999). Here, we have no difficulty in reading the two statutes at issue in harmony. While a municipality may prepare plans for lands lying within five miles of the city limits, Ark. Code Ann. § 14-56-413, all water development projects must still comply with the Arkansas Water Plan. Ark. Code Ann. § 15-22-503.

In the instant case, Bentonville did not provide ASWCC with any plan to annex or otherwise provide water services to the residents who live within its five-mile extraterritorial planning area. The decision by ASWCC did not, as characterized by Bentonville, deny Bentonville any powers to provide city services to its citizens; instead, ASWCC approved Centerton's project to provide water to residents in the area surrounding Centerton, a portion of which lies within Bentonville's five-mile extraterritorial planning area. If this court were to adopt the statutory interpretation advanced by Bentonville, the residents of the disputed area would be denied potable water until such time, if ever, Bentonville decides to provide water — even then, a water project would still have to be approved by ASWCC. We therefore hold that ASWCC acted within its statutory authority when it approved Centerton's water distribution project.

## II. Substantial Evidence

Even if ASWCC acted within its statutory authority, Bentonville suggests that ASWCC's decision is arbitrary and not supported by substantial evidence.

Substantial evidence is defined as "valid, legal, and persuasive evidence that a reasonable mind might accept as adequate to support a conclusion, and force the mind to pass beyond conjec-

ture." *Tomerlin v. Nickolich*, 342 Ark. at 333, 27 S.W.3d at 751 (quoting *Arkansas State Police Comm'n v. Smith*, 338 Ark. 354, 362, 994 S.W.2d 456, 461 (1999)). The challenging party has the burden of proving an absence of substantial evidence. *Id.* To establish an absence of substantial evidence, the challenging party must demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach its conclusion. *Id.* "The question is not whether the testimony would have supported a contrary finding but whether it supports the finding that was made." *Id.*

*Arkansas Professional Bail Bondsman v. Oudin*, 348 Ark. at 55, 69 S.W.3d at 860. Bentonville posits three reasons why ASWCC's decision should not be upheld. First, it claims that the decision is fatally flawed because ASWCC modified the water project application filed by Centerton; as such, the project as approved is not the project Centerton submitted for approval. Next, Bentonville argues the decision is arbitrary. Finally, Bentonville contends that the decision is not supported by substantial evidence.

### A. ASWCC's Modification of Centerton's Proposed Water Project

 Bentonville asserts that ASWCC modified Centerton's water project application, and therefore its approval was without authority.[1] Bentonville contends that ASWCC modified Centerton's project in two material respects: (1) certain areas were excluded from the project; and (2) water would be supplied by the Two-Ton regional water system. First, ASWCC excluded from the project any areas annexed by Bentonville prior to March 15, 2001. The record does not indicate that Bentonville annexed any of the disputed area between February 14, 2000, when Centerton filed its water project application, and March 15, 2001. As a result, granting Bentonville the opportunity to provide water service to its residents did not materially alter the scope of Centerton's water project.

---

[1] The rules promulgated by ASWCC provide that "[t]he Referee may approve all or part of an application." ASWCC Rule 604.7.

■ As to the second assertion that ASWCC materially altered the project by specifying water would be provided by the Two-Ton regional water system, Bentonville concludes it would be "required to purchase wholesale water from Two-Ton to serve areas in its city limits." Such an argument is premised on the assumption that Bentonville will at some future time annex portions of the area serviced by the Centerton water project. Once again, this is nothing more than speculation. The Two-Ton regional water system was specified in the original PER and does not represent any change, much less a material change, in the water project.

### B. Whether the Decision Is Arbitrary

■ Next, Bentonville argues that the decision is arbitrary because ASWCC altered Centerton's project without the knowledge or consent of anyone, the selection of the Two-Ton regional water system to provide the water is arbitrary, and permanently limiting Bentonville to serving only its currently existing customers is arbitrary.

> Administrative action may be regarded as arbitrary and capricious where it is not supportable on any rational basis. To have an administrative action set aside as arbitrary and capricious, the party challenging the action must prove that it was willful and unreasoning action, without consideration and with a disregard of the facts or circumstances of the case. We have stated that the requirement that administrative action not be arbitrary and capricious is less demanding than the requirement that it be supported by substantial evidence. . . . [O]nce substantial evidence is found, it automatically follows that a decision cannot be classified as unreasonable or arbitrary.

*Arkansas Professional Bail Bondsman v. Oudin*, 348 Ark. at 55, 69 S.W.3d at 860 (quoting *Arkansas Cont. Lic. Bd. v. Pegasus Renovation Co.*, 347 Ark. 320, 64 S.W.3d 241 (2001)).

■ As we have already concluded, ASWCC did not materially alter the project by excluding any area annexed by Bentonville prior to March 15, 2001. Furthermore, the selection of the Two-Ton regional water system, as specified in the original

PER, is not an arbitrary decision of the Commission. In fact, ASWCC's order does not prohibit the use of water from other sources so long as the variance is approved by ASWCC. Moreover, the ASWCC order does not limit Bentonville to serving only its current customers; rather, the decision permits the Centerton water project to service customers located in an area that Bentonville may or may not at some future time annex or include in a future water project application. ASWCC rules anticipate that water projects may overlap. *See* ASWCC Rule 601.1(G) (defining "project" to include "[p]rojects that would serve areas that are being served by other entities or projects that would serve areas on which other projects have, or have applied for, water plan certification"). In any event, the ASWCC order specifically provides that Bentonville and Centerton, with ASWCC approval, may negotiate a modification in the responsibility to provide service to residents in the area or share water lines where the two cities determine it to be economical and beneficial. We conclude that Bentonville's arguments on this point are without merit.

## C. Substantial Evidence

To support its claim of a lack of substantial evidence, Bentonville quotes its own public works director who testified that Bentonville could provide service to the area residents as quickly as Centerton, and that some of Centerton's residents do not want to pay for the project. Bentonville goes on to conclude that the project is not needed and that "[o]pposition to this project clearly outweighs the support." The argument as framed, however, misapprehends the substantial-evidence standard of review. As quoted above, "[t]he question is not whether the testimony would have supported a contrary finding but whether it supports the finding that was made." *Arkansas Professional Bail Bondsman v. Oudin*, 348 Ark. at 55, 69 S.W.3d at 861.

 Substantial evidence supports ASWCC's decision.[2] Centerton filed a PER that detailed the water project's purpose,

---

[2] The circuit court apparently found substantial evidence to support ASWCC's decision because it adopted the findings of fact, conclusions of law, and order of the

expected benefits, necessity, feasibility, and estimated cost. ASWCC conducted public hearings on April 4, 2000, and on May 9, 2000, accepted written comments and evidence, and took testimony from all interested parties, including Centerton, Bentonville, and residents of the proposed project's service area. An engineer from the firm that prepared the PER testified concerning the need for the project, its beneficial impact on both current and proposed water customers, and its estimated cost. Many of the residents in the area confirmed that their well water is contaminated or of poor quality. Consequently, they are forced to spend substantial sums to secure potable water for their homes and businesses. Existing customers would also benefit from additional quantities of water being available during high flow periods, such as fire fighting. The project could assist Centerton in lowering its ISO rating, thereby reducing fire insurance premiums for the city's customers. While there was opposition to the project, ASWCC concluded that "(a) the project complies with and implements the goals and objectives of the Arkansas Water Plan; and (b) the project adequately coordinates the use of water resources within the region in which the project is located, and within the state as a whole." ASWCC Rule 604.5. Based on our review of the record in this matter, we conclude that ASWCC's order approving Centerton's water project is supported by substantial evidence.

Because ASWCC acted within its statutory authority, which is not preempted by a municipality's planning authority in a five-mile area surrounding the city limits, and because ASWCC's decision is supported by substantial evidence, we affirm its order approving Centerton's water development project, as amended, for water plan compliance certification.

Reversed and remanded with instructions to reinstate the decision by the Arkansas Soil and Water Conservation Commission.

---

commission except where the water project extended into Bentonville's five-mile extraterritorial planning area.