Mr. Larry B. Norris, Director Arkansas Department of Correction P.O. Box 8707 Pine Bluff, AR 71611-8707
Dear Mr. Norris:
You have requested my opinion concerning two issues related to the Arkansas Freedom of Information Act (FOIA) (A.C.A. § 25-19-101 et seq.). Your questions are:
 (1) Are tape recordings of inmate telephone calls subject to disclosure under the FOIA?
 (2) Are audio recordings of inmate disciplinary hearings subject to disclosure under the FOIA?
RESPONSE
Question 1 — Are tape recordings of inmate telephone calls subject todisclosure under the FOIA?
It is my opinion that tape recordings of inmate telephone calls can be withheld from disclosure if they are a part of the inmate's "Institutional File and Inmate Jacket," as that term is defined in the Board of Corrections' applicable rules and regulations. If such tape recordings are not a part of the inmate's Institutional File and Inmate Jacket, they can be withheld from disclosure only if their contents render them subject to a specific exemption under the FOIA, another law, or under the constitutional right of privacy. Otherwise, the tape recordings must be disclosed under the FOIA if requested. I will discuss these conclusions more fully below.
Tape recordings of inmate telephone calls fall within the FOIA's broad definition of "public records:"
 (5)(A) "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium required by law to be kept or otherwise kept and that constitute a record of the performance or lack of performance of official functions that are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A).
Because the tape recordings fall within the above quoted definition of "public records," they must be disclosed under A.C.A. § 25-19-105(a)(1)(A) of the FOIA unless they fall within an exemption from disclosure. The FOIA sets forth a list of specific exemptions under which "public records" can be withheld. See A.C.A. § 25-19-105(b). I will discuss the potential applicability of these specific exemptions later in this opinion. In addition, the FOIA provides that "public records" can be withheld from disclosure if a law other than the FOIA specifically creates an exemption from disclosure. A.C.A. § 25-19-105(a)(1)(A). I have previously interpreted that provision of the FOIA not to require that other laws specifically mention the FOIA in order to create an exemption from disclosure under the FOIA. See Op. Att'y Gen. No. 2004-018.
The statutes that govern the Department of Correction include the following provision:
 (e)(1) The director shall make and preserve a full and complete record of each and every person committed to the Department of Correction, along with a photograph of the person and data pertaining to his or her trial conviction and past history.
 (2)(A) To protect the integrity of those records and to ensure their proper use, it shall be unlawful to permit inspection of or disclose information contained in those records or to copy or issue a copy of all or part of any record except as authorized by administrative regulation or by order of a court of competent jurisdiction.
 (B) The regulations shall provide for adequate standards of security and confidentiality of those records.
 (3) For those inmates committed to the Department of Correction and judicially transferred to the Department of Community Correction, the preparation of this record may be delegated to the Department of Community Correction pursuant to policies applicable to records transmission adopted by the Board of Corrections.
 (4) Administrative regulations may authorize the disclosure of information contained in such records for research purposes.
A.C.A. § 12-27-113.
In my opinion, this statute creates an exemption from disclosure under the FOIA for the records that fall within its ambit. In order to determine which records are covered by this exemption, it is necessary to refer to the regulations that this statute authorizes. The applicable regulations, promulgated by the Board of Correction pursuant to the authority granted in this statute and in A.C.A. § 12-27-105, create standards for the security and confidentiality of "inmate record[s]," which the regulations also refer to as the "Institutional File and Inmate Jacket." The regulations state the following definition of that term:
 A full and complete record in written or electronic form of each person committed to the Department of Correction, which shall include but is not limited to a photograph of the convicted person, conviction data, and criminal history.
Board of Corrections' Rules and Regulations Governing Inmate Records.
This definition is open-ended and could conceivably encompass certain tape recordings of inmate telephone calls. In my opinion, the question of whether a particular tape recording of an inmate's telephone calls falls within the confidentiality provisions of this regulation depends upon whether, under the Department of Correction's established policy and practice, the tape recordings in question are a part of the inmate's Institutional File and Inmate Jacket.
The Arkansas Supreme Court has consistently applied the principle that the interpretation of a law by executive and administrative agents who are charged with administering that law will be given considerable deference, and will not be overturned unless it is clearly wrong. See,e.g., Ark. Soil, Water Conserv. v. City of Bentonville, 351 Ark. 289,92 S.W.3d 47 (2002); Cave City Nursing Home, Inc. v. Arkansas Dept. of HumanServices, 351 Ark. 13, 89 S.W.3d 884 (2002). Because the Department of Correction is charged with the responsibility of administering the provisions of A.C.A. § 12-27-113 and the rules and regulations promulgated thereunder, it is my opinion that the Department's established policy concerning inmate jackets, and its decision pursuant to that policy to include a particular record in an inmate's Institutional File and Inmate Jacket, will be upheld unless that decision is clearly wrong. In my opinion, if a court were faced with the question, it would apply this principle in analyzing whether any particular tape recording of an inmate's telephone conversations should be withheld from disclosure under A.C.A. § 12-27-113. Accordingly, I conclude that if the recordings in question are, under the Department's established policy and practice, a part of the inmate's Institutional File and Inmate Jacket, they can be withheld from disclosure under A.C.A. § 12-27-113 and the FOIA's "catch-all" exemption that is stated in A.C.A. § 25-19-105(a)(1)(A). I note in this regard that the tape recordings that were at issue in my predecessor's Opinion No. 97-406 were recordings of the conversations of offenders who had been committed to the Department of Community Punishment. Under that Department's established policy and practice, those recordings were not a part of the inmates' "jackets."
If the tape recordings in question are not a part of the inmates' Institutional Files and Inmate Jackets, they may nevertheless be withheld from disclosure if their contents would render them subject to a specific exemption that is stated in A.C.A. § 25-19-105(b) of the FOIA. As a general matter, inmate telephone calls would not appear to fall within any of these exemptions. However, it is conceivable that the taped contents of particular conversations could bring them within some of those exemptions. For example, a tape recording of an inmate's telephone conversation with a doctor concerning a medical condition could constitute a "medical record" within the meaning of A.C.A. §25-19-105(b)(2), and would thus be exempt from disclosure. Similarly, an inmate's taped conversation that is part of an ongoing law enforcement investigation could bring it within the exemption for such investigations under A.C.A. § 25-19-105(b)(6).
Finally, the contents of a tape recording of an inmate's telephone conversations could conceivably render it exempt from disclosure under the constitutional right of privacy. The Arkansas Supreme Court has recognized that the constitutional right of privacy can supersede the specific disclosure requirements of the FOIA. See McCambridge v. City ofLittle Rock, 298 Ark. 219, 766 S.W.2d 909 (1989). The McCambridge court held that a constitutional privacy interest applies to matters that: (1) an individual wants to and has kept confidential; (2) can be kept confidential but for the challenged governmental action in disclosing the information; and (3) would be harmful or embarrassing to a reasonable person if disclosed. In order for a tape recording of an inmate's telephone conversations to be withheld from disclosure under the constitutional right of privacy, this three-part standard set forth by the McCambridge court must be met.
You have specifically asked about the waiver of the constitutional right of privacy. You describe a situation in which a person who has been a party to various telephone conversations with inmates requested and received a public hearing concerning the quality of the telephone service. Your question is whether this public hearing could constitute a waiver of a claim by that person of the constitutional right of privacy. It is my opinion that a public hearing on the quality of telephone service does not alone constitute a waiver of a claim of the constitutional right of privacy of a taped telephone conversation. Under the standard set forth by the McCambridge court, an individual would waive the claim only if he or she had made the record in question public. A public hearing on telephone service quality does not, on its face at least, entail a publication of the contents of any taped telephone conversation, and therefore does not, in and of itself, constitute a waiver of the right recognized in McCambridge. Of course, if the hearing did entail the publication of such recordings, the person who requested the hearing may be deemed to have waived the claim if he she chose to carry through with the hearing despite this fact. The question of whether a waiver has occurred will turn largely upon the facts of the case, including such matters as whether the person who requested the hearing sought a protective order to keep the recordings from being disclosed, and whether the person had the option of foreclosing the hearing if he or she was unsuccessful in obtaining such an order. We do not have the benefit of any precedent from the Arkansas Supreme Court addressing the issue of waivers of the constitutional right of privacy, or specifying how far the claimant's duty to protect the claimed private information should extend.
If, under all of the facts and circumstances, the tape recordings are not exempt from disclosure under A.C.A. § 12-27-113, or under any other specific statutory exemption from disclosure (such as those listed in the FOIA itself), or under the constitutional right of privacy, the recordings are subject to disclosure under the FOIA.
Question 2 — Are audio recordings of inmate disciplinary hearings subjectto disclosure under the FOIA?
It is my opinion that audio recordings of inmate disciplinary hearings can be withheld from disclosure under the FOIA, as explained below.
You state that the Department holds the view that audio recordings of inmate disciplinary hearings should be withheld from disclosure under A.C.A. § 12-27-113. For the reasons discussed above concerning the weight that will be accorded to the Department's interpretation of A.C.A. §12-27-113, it is my opinion that the audio recordings of inmate disciplinary hearings can be withheld from disclosure on the basis of that interpretation.
As explained above, A.C.A. § 12-27-113 requires the Department to maintain records on each inmate and to protect the confidentiality and security of those records. That statute authorizes the Board of Correction to promulgate rules and regulations concerning these records and their confidentiality. As also discussed above, the regulatory definition of "inmate records," or the "Institutional File and Inmate Jacket," that has been promulgated pursuant to that statutory authority is open-ended. In my opinion, that definition could conceivably encompass audio recordings of disciplinary hearings. Moreover, because the Department is charged with the responsibility of implementing and executing A.C.A. § 12-27-113 and the rules and regulations promulgated thereunder, the Department's interpretation of those provisions will be given deference and will be upheld unless that interpretation is clearly wrong. In my opinion, an established Department policy and practice under which audio recordings of inmate disciplinary hearings are a part of the inmate's "Institutional File and Inmate Jacket" (i.e., the "inmate records" that are protected from disclosure under A.C.A. § 12-27-113) is not clearly wrong.
My conclusion regarding this issue is bolstered by the fact that the Director of the Department is granted the authority to formulate, with the approval of the Board of Correction, internal inmate disciplinary procedures. See A.C.A. § 12-29-103. In my opinion, the Director can, pursuant to this authority, determine that audio recordings of inmate disciplinary hearings are included in the inmate records that are protected from disclosure under A.C.A. § 12-27-113.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General