**Robert HENDRICKSON, Plaintiff,**

v.

**EBAY INC., Luckyboy Entertainment, Steven Reilly, and Does 1 through X, Defendants.**

**and related cases.**

**Nos. CV 01–0495 RJK (RNBx), CV 01–3412 RJK.**

United States District Court, C.D. California.

Sept. 4, 2001.

Robert Hendrickson, Woodland Hills, CA, pro se.

Jeffrey E. Scott, Raymond B. Kim, Santa Monica, CA, for defendants.

**ORDER GRANTING DEFENDANTS EBAY INC., MARGARET C. WHITMAN AND MICHAEL RICHTER'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, MOTION FOR PARTIAL SUMMARY JUDGMENT**

KELLEHER, District Judge.

This case involves a matter of first impression in the federal courts: whether one of the "safe harbor" provisions of the Digital Millennium Copyright Act ("DMCA") affords protection to the operator of the popular Internet auction web service, www.ebay.com, when a copyright owner seeks to hold the operator second-

arily liable for copyright infringement by its sellers. On August 20, 2001, the Court heard Defendants eBay, Inc. ("eBay"), Margaret Whitman and Michael Richter's (collectively, the "eBay Defendants") motion for summary judgment on the copyright and trademark claims in the consolidated *Hendrickson v. eBay, Inc. et al.* cases. After the hearing, the Court took the motion under submission. After considering the papers submitted by the parties, the case file and oral argument, the Court hereby GRANTS the motion.

## I. FACTUAL BACKGROUND

eBay provides an Internet website service where over 25 million buyers and sellers of consumer goods and services have come together to buy and sell items through either an auction or a fixed-price format. Pursuant to their agreement with eBay, users set up user IDs or "screen names" to conduct business on eBay's website in a semi-anonymous fashion.[1] Buyers and sellers reveal their real identities to each other in private communications to complete sales transactions.

eBay's website allows sellers to post "listings" (or advertisements) containing descriptions of items they wish to offer for sale; and it allows buyers to bid for items they wish to buy. People looking to buy items can either browse through eBay's 4,700 categories of goods and services or search for items by typing words into eBay's search engine. Every day, eBay users place on average over one million new listings on eBay's website. At any given time, there are over six million listings on the website.[2]

On or about December 20, 2000, eBay received a "cease and desist" letter from *pro se* Plaintiff Robert Hendrickson. The letter advised eBay that Plaintiff dba Tobann International Pictures is the copyright owner of the documentary "Manson." The letter also stated that pirated copies of "Manson" in digital video disk ("DVD") format were being offered for sale on eBay. However, the letter did not explain which copies of "Manson" in DVD format were infringing copies; nor did it fully describe Plaintiff's copyright interest. The letter demanded that eBay cease and

---

1. This is akin to what users of CB radios do when they give themselves a handle that identifies themselves over the radio waves. Some eBay user IDs referenced in the records of this case include "emailtales" and "luckyboy-entertainment," and "vidjointnyc."

2. In this case, eBay repeatedly characterizes its website as merely an online venue that publishes "electronic classified ads." (*See, e.g.,* Motion at 3.) However, eBay's description grossly oversimplifies the nature of eBay's business. A review of eBay's website shows eBay operates far more than a sophisticated online classified service. (To the extent some of the descriptions about eBay's website are not in the record, the Court takes judicial notice of www.ebay.com and the information contained therein pursuant to Federal Rule of Evidence 201.) Indeed, eBay's website is known first and foremost as an Internet *auction* website. *See, e.g.,* Leslie Walker, *Ebay Goes Off–Line To Train Its Next Block of Deal-*

ers, Wash. Post, Aug. 9, 2001, *available at* 2001 WL 23185584 ("eBay, the giant Internet auction house"); Pradnya Joshi & Charles V. Zehren, *Bidders' Remorse Online Auctions Now No. 1 Source of Internet Fraud,* Newsday, Aug. 30, 2000, *available at* 2000 WL 10031214 ("eBay, the world's largest online auction service"). eBay's own website describes itself as "the world's largest online marketplace." *See* "Overview" page, *at* http://pages.ebay.com/community/aboutebay/overview/index.html. eBay "enables trade on a local, national and international basis" and "features a variety of . . . sites, categories and services that aim to provide users with the necessary tools for efficient online trading in the auction-style and fixed price formats." *Id.* eBay's Internet business features elements of both traditional swap meets—where sellers pay for use of space to display their goods—and traditional auction houses—where goods are sold via the highest bid process.

desist "from any and all further conduct considered an infringement(s) of [Plaintiff's] right" or else face prosecution "to the fullest extend provided by law." (*See* Richter Decl., Ex. C.)

Promptly after receiving this letter, eBay sent Plaintiff e-mails asking for more detailed information concerning his copyright and the alleged infringing items. (*See id.*, Exs. D–G.) eBay advised Plaintiff that he has to submit proper notice under the DMCA. For example, on December 20, 2000, eBay sent the following e-mail to Plaintiff:

> [R]ecognizing that some posted items may infringe certain intellectual property rights, we have set up specific procedures which enable verified rights owners to identify and request removal of allegedly infringing auction listings. These procedures are intended to substantially comply with the requirements of the [DMCA], 17 U.S.C. section 512. Click on the following link to access the [DMCA].

(*Id.*, Ex. D.) In that e-mail, eBay also encouraged Plaintiff to join its Verified Rights Owner ("VeRO") program, by submitting eBay's Notice of Infringement form.[3] As eBay explained, some of the benefits of the VeRO program include, among other things: (1) access to a customer support group dedicated to servicing the VeRO participants; (2) dedicated priority email queues for reporting alleged infringing activities; and (3) ability to use a special feature called "Personal Shopper," which allows users to conduct automatic searches for potentially infringing item. (*Id.*, Ex. D.)

On December 28, 2000, Defendant Richter, eBay's Intellectual Property Counsel, followed up with another e-mail:

> We have tried to contact you numerous times concerning your letter dated December 14, 2000.[¶] We would like to assist you in removing items listed by third parties on our site which you claim infringe your rights. However, in order to do so, we would need proper notice under the [DMCA]. Specifically, we would need you to, among other things, identify the exact items[4] which you believe infringe your rights. In addition, we would need a statement from you, under penalty of perjury, that you own (or are the agent of the owner) the copyrights in the documentary. As you can understand, a statement that we 'immediately CEASE and DESIST from any and all further conduct considered an infringement(s) of my right granted under Copyright and other laws of the land' gives us no indication of what your rights are, and gives us no indication as to which items infringe such rights.

(*Id.*, Ex. G.) Plaintiff refused to join eBay's VeRO program and refused to fill out eBay's Notice of Infringement form.[5] Before filing suit, Plaintiff never provided eBay the specific item numbers that it sought.

---

**3.** eBay's Notice of Infringement form quotes the notification provision of the DMCA, as set forth in 17 U.S.C. § 512(c)(3)(A). (*See* Richter Decl., Ex. B.)

**4.** Each listing on eBay's website has its own item number.

**5.** In his response to eBay's First Set of Requests for Admissions, Plaintiff explained why he refused to join the VeRO program:

> Knowing that EBAY's so called VeRO program is nothing more than a wickedly concealed scheme to defraud unknowledgeable proprietors of Copyrights, out of their LAWFUL rights, Plaintiff refuses to join in, become a member of, participate in, act in concert with, be associated with, lend his name to, or in any way, be a part of a scheme intended to deprive anyone of their hard earned LAWFUL rights.
> (Richter Decl., Ex. P. at 2.)

## II. PROCEDURAL BACKGROUND

On January 17, 2001, Plaintiff filed the first of three lawsuits against eBay. In CV 01–0495 ("Case No. 1"), Plaintiff sued eBay and two eBay sellers, asserting a claim for copyright infringement. The Complaint in Case No. 1 alleges, among other things, that eBay is liable for the sale of unauthorized copies of the film "Manson" by users on eBay's website.

On February 12, 2001, Plaintiff filed the second lawsuit. In CV 01–1371 ("Case No. 2"), Plaintiff sued eBay, David Durham (another third party seller) and Margaret C. Whitman ("Whitman"), eBay's President and CEO. In this case, Plaintiff alleges that eBay and Whitman are liable for copyright infringement because they allowed Defendant Durham to sell unauthorized copies of the film "Manson" on or after January 17, 2001, the date Plaintiff filed Case No. 1.

On April 13, 2001, Plaintiff filed his third lawsuit against eBay. In CV 01–3412 ("Case No. 3"), Plaintiff added several other defendants, including eBay's Senior Intellectual Property Counsel, Michael Richter ("Richter"). Plaintiff alleges, among other things, that eBay and Richter are liable for copyright infringement because they wrongfully continued to allow the sale of unauthorized copies of the film "Manson" by eBay users after February 25, 2001, the date Plaintiff commenced Case No. 2. In addition, Plaintiff alleges a Lanham Act claim and a state claim for tortious interference with prospective economic advantage.

On April 30, 2001, the Court denied Plaintiff's motion for preliminary injunction in Case No. 1. On the same day, the Court granted eBay's motion to consolidate the three actions for all purposes. On July 2, 2001, the Court issued an order granting, in part, the eBay Defendants' first motion for summary judgment. The Court denied the eBay Defendants' motion

for summary judgment on the copyright claims without prejudice to its refiling. However, the Court granted eBay and Richter's motion for summary adjudication of the application of the Lanham Act's "innocent infringer" provision. The Court also granted the motion for summary judgment on Plaintiff's state claim on the ground that it is preempted by the Copyright Act.

On July 27, 2001, the eBay Defendants filed the pending motion for summary judgment. Plaintiff filed his opposition on August 6, 2001 and the eBay Defendants filed their reply on August 13, 2001.

## III. DISCUSSION

### A. Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A fact is material only if it is relevant to a claim or defense and its existence might affect the suit's outcome. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc.,* 809 F.2d 626, 630 (9th Cir.1987). A court may not, on a motion for summary judgment, evaluate the credibility of the evidence submitted by the parties. *See Leslie v. Grupo ICA,* 198 F.3d 1152, 1157–59 (9th Cir.1999).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*

Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990). To demonstrate that the non-moving party lacks sufficient evidence to entitle it to judgment, the moving party must affirmatively show the absence of such evidence in the record, either by deposition testimony, the inadequacy of documentary evidence or by any other form of admissible evidence. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The moving party has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. *See id.* at 325, 106 S.Ct. 2548.

A non-moving party's allegation that factual disputes persist between the parties will not automatically defeat an otherwise properly supported motion for summary judgment. *See* Fed.R.Civ.P. 56(e) (non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial."). "[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City and County of San Francisco,* 125 F.3d 1328, 1331 (9th Cir. 1997), *quoting Anderson,* 477 U.S. at 249, 252, 106 S.Ct. 2505. In judging evidence at the summary judgment stage, courts must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *See Matsushita Elec.*

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Chaffin v. United States,* 176 F.3d 1208, 1213 (9th Cir.1999).

## B. The Copyright Claims Against eBay

### 1. *The Infringing Activity*

Plaintiff alleges that eBay participated in and facilitated the unlawful sale and distribution of pirated copies of "Manson" DVDs by providing an online forum, tools and services to the third party sellers. (*See* Opp. at 3; *see also* Complaint in Case No. 1, ¶¶ 18, 20, 21 & 30.) Plaintiff does not allege that the advertisements that sellers posted on eBay's website violate his copyright in "Manson." The type of secondary liability that Plaintiff seeks to impose on the eBay Defendants is similar to the type of secondary liability the Ninth Circuit allowed in *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259 (9th Cir.1996). There, the court held that the complaint stated causes of action for vicarious and contributory copyright infringement against the operators of a traditional swap meet for sales of counterfeit recordings by independent vendors.[6] Thus, the issue raised by Plaintiff's copyright claim is not whether eBay can be held secondarily liable for "third party advertisements." (*See* Reply at 3.) Rather, the question is whether eBay can be held secondarily liable for providing the type of selling platform/forum and services that it provided, however limited or automated in nature, to sellers of counterfeit copies of the film "Manson." Before the Court reaches the merits of

**6.** In April of this year, the Ninth Circuit in *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004 (9th Cir.2001) extended *Fonovisa* to the Internet context. Napster operates an Internet service that facilitates the transmission and retention of digital audio files by its users. The Ninth Circuit affirmed the district court's conclusion that the plaintiffs—record companies and music publishers—have demonstrat-

ed a likelihood of success on the merits of their contributory and vicarious copyright infringement claims against Napster under the standards set forth in *Fonovisa.* The Ninth Circuit declined to reach the question of whether the safe harbor provisions of the DMCA applied, concluding that "this issue will be more fully developed at trial." 239 F.3d at 1025.

that question, the Court must address a preliminary issue: whether the DMCA shields eBay from liability for copyright infringement.

### 2. *The DMCA*

The DMCA "is designed to facilitate the robust development and worldwide expansion of electronic commerce, communications, research, development, and education." S.Rep. No. 105–190, at 1 (105th Congress, 2d Session 1998). Title II of the DMCA, set forth in 17 U.S.C. § 512, "protects qualifying Internet service providers from liability for all monetary relief for direct, vicarious and contributory infringement." *Id.* at 20. "Title II preserves strong incentives for service providers and copyright owners to cooperate to detect and deal with copyright infringements that take place in the digital networked environment." *Id.* at 40.

There is no dispute over whether eBay is an Internet "service provider" within the meaning of Section 512. eBay clearly meets the DMCA's broad definition of online "service provider." *See* 17 U.S.C. § 512(k)(1)(B) ("the term 'service provider' means a provider of online services or network access, or the operator of facilities therefor").

To qualify for one of the safe harbor provisions, the service provider's activities at issue must involve functions described in one of four separate categories set forth in subsections (a) through (d) of Section 512. *See* 17 U.S.C. 512(n). eBay argues that it qualifies for protection under the third and fourth categories. Because the record establishes that eBay qualifies for protection under Section 512(c), the Court need not address the applicability of Section 512(d).

### 3. *Safe Harbor Under Section 512(c)*

Subsection (c) limits liability for "infringement of copyright by reason of the

*storage* at the direction of a user of *material* that resides on a system or network controlled or operated by or for the service provider." 17 U.S.C. § 512(c) (emphasis added). This section applies where a plaintiff seeks to hold an Internet service provider responsible for either (1) infringing "material" stored and displayed on the service provider's website *or* (2) infringing "activity using the material on the [service provider's computer] system." 17 U.S.C. § 512(c)(1)(A)(i). Here, because the focus of the copyright claims against eBay concerns infringing activity—the sale and distribution of pirated copies of "Manson"— using "materials" posted eBay's website, Section 512(c) would provide eBay a safe harbor from liability if eBay meets the conditions set forth therein.

Three requirements for safe harbor are delineated in Section 512(c)(1). First, the service provider must demonstrate that it does not have actual knowledge that an activity using the material stored on its website is infringing *or* an awareness of "facts or circumstances from which infringing activity is apparent." 17 U.S.C. § 512(c)(1)(A)(i)–(ii). Alternatively, the service provider must show that it expeditiously removed or disabled access to the problematic material upon obtaining knowledge or awareness of infringing activity. *See* 17 U.S.C. § 512(c)(1)(A)(iii). Second, the service provider must show it "does not receive a financial benefit directly attributable to the infringing activity" *if* the service provider has "the right and ability to control such activity." 17 U.S.C. § 512(c)(1)(B). Third, the service provider must show that it responded expeditiously to remove the material that is the subject of infringing activity upon receiving notification of the claimed infringement in the manner described in Section 512(c)(3). 17 U.S.C. § 512(c)(1)(C).

### a. *The Third Prong of the Test: Notification of the Alleged Infringing Activity*

Under the third prong of the test, the service provider's duty to act is triggered only upon receipt of proper notice. *See id.* Section 512(c)(3) sets forth the required elements for proper notification by copyright holders. First, rights holders must provide *written* notification to the service provider's designated agent. *See* 17 U.S.C. § 512(c)(3). In addition, the notification must include "substantially" the following six elements:

(1) a physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed;

(2) identification of the copyrighted work claimed to have been infringed;

(3) identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material;

(4) information reasonably sufficient to permit the service provider to contact the complaining party;

(5) a statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law; and

(6) a statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the copyright owner.

*Id.*

Preliminary, the Court rejects Plaintiff's argument that he need not submit written notification in the manner described above (*i.e.*, provide the notification referenced in the third prong of the safe harbor test) as long as other facts show the service provider received actual or constructive knowledge of infringing activity. (*See* Opp. at 8.) Plaintiff refers to the first prong of the safe harbor test set forth in Section 512(c)(1)(ii) and (iii) in support of this argument. Plaintiff's argument has no merit.

■ The DMCA expressly provides that if the copyright holder's attempted notification fails to "comply substantially" with the elements of notification described in subsection (c)(3), that notification "shall *not* be considered" when evaluating whether the service provider had actual or constructive knowledge of the infringing activity under the first prong set forth in Section 512(c)(1). 17 U.S.C. § 512(c)(3)(B)(i) (emphasis added). Here, Plaintiff does not dispute that he has not strictly complied with Section 512(c)(3). (*See, e.g.,* Opp. at 8–9.) The question is whether Plaintiff's *imperfect* attempts to give notice satisfy Section 512(c)(3)'s "substantial[ ]" compliance requirement.

### (1) *No Statement Attesting to Good Faith And Accuracy of Claim*

Plaintiff's pre-suit "cease and desist" letter and e-mails to eBay do not include several of the key elements for proper notice required by Section 513(c)(3). (*See* Richter Decl., Exs. C, E, F, H & I.) None of these writings includes a written statement under "penalty of perjury" attesting to the fact "that the information in the notification is accurate ... [and] the complaining party is authorized to act on behalf of the owner" of the copyright at issue. 17 U.S.C. § 512(c)(3)(A)(vi). Additionally, none of these writings includes a written statement that Plaintiff "has a good faith belief that use of the material in the manner complained of is not authorized." 17 U.S.C. § 512(c)(3)(A)(v). The complete failure to include these key elements in his written communications to eBay, even after eBay specifically asked

for these items, renders Plaintiff's notification of claimed infringement deficient under Section 512(c)(3).

### (2) *Inadequate Identification of Material Claimed to be the Subject of Infringing Activity*

Moreover, the record shows that Plaintiff failed to comply substantially with the requirement that he provide eBay with sufficient information to identify the various listings that purportedly offered pirated copies of "Manson" for sale. *See* 17 U.S.C. § 512(c)(3)(A)(iii). It is true that Plaintiff has informed eBay in writing that counterfeit copies of "Manson" were being offered and sold on eBay's website. However, when eBay requested that Plaintiff identify the alleged problematic listings by the eBay item numbers, Plaintiff refused. (*See, e.g.,* Kim Decl., Ex. P [Plaintiff's Response to First Request for Admissions], RFA Nos. 21 and 22.) Plaintiff contends that it is not his job to do so once he has notified eBay of the existence of infringing activity by eBay sellers. (*See id.* at 3.)

The Court recognizes that there may be instances where a copyright holder need not provide eBay with specific item numbers to satisfy the identification requirement. For example, if a movie studio advised eBay that *all* listings offering to sell a new movie (*e.g.,* "Planet X,") that has not yet been released in VHS or DVD format are unlawful, eBay could easily search its website using the title "Planet X" and identify the offensive listings. However, the record in this case indicates that specific item numbers were necessary to enable eBay to identify problematic listings.

Plaintiff has never explained what distinguishes an authorized copy of "Manson" from an unauthorized copy. Initially, in his December 2000 cease and desist letter, Plaintiff only complained about pirated copies of "Manson" in DVD format. (*See* Richter Decl., Ex. C.) Plaintiff did not inform eBay that *all* DVD copies were unauthorized copies; he merely asserted that pirated copies of "Manson" DVDs were being sold on eBay. (*See id.*) Subsequently, Plaintiff sent an e-mail to eBay complaining about a seller who was selling a pirated copy of "Manson" in VHS format. (*See id.* at ¶ 24 & Ex. I.)[7] But Plaintiff's e-mail did not identify the basis for his claim that the seller was selling a pirated copy of "Manson."

During oral argument, Plaintiff stated that he notified eBay that *all* copies of "Manson" in DVD format are unauthorized. However, the undisputed record in this case shows that Plaintiff did not provide this notification *in writing* before filing suit.[8] A copyright holder must comply

---

7. On January 4, 2001, Plaintiff sent eBay an e-mail complaining about a seller named "vidjointnyc@hotmail.com" who was "still selling pirated copies of my film MANSON in YOUR 'Thieves Market'." (*See* Richter Decl., Ex. I.) After receiving Plaintiff's e-mail, eBay discovered that this seller had one active listing on eBay's website; that listing offered "Charles Manson Family Footage VHS New!!" (*See id.* at ¶ 24 & Ex. J.) Nowhere in the listing did the seller state he was offering a copy of a film entitled "Manson." (*See id.*) eBay removed the listing at the risk of exposing itself to a lawsuit from the seller even though up until that time Plaintiff had only complained about pirated DVDs, the seller

was clearly offering a VHS tape for sale, and the listing made no reference to the title "Manson." (*See id.* at ¶ 24 & n. 1.)

8. Plaintiff contends that during a January 2001 telephone conversation (shortly after he commenced suit), he told Richter that all copies of "Manson" in DVD format infringe on his copyright because he has never authorized the release of this movie on DVD. (Hendrickson Decl., ¶ 11.) There is a dispute in the record as to when Plaintiff orally advised eBay that *all* copies of "Manson" in DVD format were unauthorized. (*Compare id. with* Kim Decl., ¶ 7.) However, the dispute over the dates is immaterial. It is undisputed that

with the "written communication" requirement. *See* 17 U.S.C. § 512(c)(3)(A). The writing requirement is not one of the elements listed under the substantial compliance category. *See id.* Therefore, the Court disregards all evidence that purports to show Plaintiff gave notice that all DVDs violate his copyright in "Manson." [9]

With respect to "Manson" VHS tapes, Plaintiff has admitted that authorized copies of "Manson" have been released in VHS format. (*See* Hendrickson Decl., ¶ 11 ("certain VHS tapes were infringing[ ] because some of those had been authorized"; Kim Decl., ¶ 7.)) Therefore, authorized copies of "Manson" in VHS format are available in the marketplace. Plaintiff has offered no explanation to eBay or this Court as to how eBay could determine which "Manson" VHS tapes being offered for sale are unauthorized copies.[10]

Plaintiff raises two more arguments in support of his claim that he need not provide eBay with specific item numbers to satisfy the "identification" requirement under the DMCA. Neither argument has merit.

First, Plaintiff points out that he has sent an e-mail to eBay identifying the eBay user IDs of four alleged infringers. Plaintiff asserts that the identification of user names provides eBay with sufficient information to locate the listings that offer pirated copies of "Manson." (*See* Hendrickson Decl., ¶ 9(b).) The e-mail in question, dated December 21, 2000, does not satisfy the DMCA's identification requirement. (*See id.*, Ex. G.)[11] The e-mail does not identify the listings that are claimed to be the subject of infringing activity; it does not even describe the infringing activity. Moreover, it contains none of the other requisite elements of a proper notification under Section 512(c)(3)(A), *e.g.*, a statement attesting to the good faith and accuracy of the allegations.

Second, Plaintiff contends that eBay can identify listings offering infringing copies of "Manson" for sale without particular item numbers because eBay previously removed two listings even though Plaintiff did not provide the item numbers. (*See* Hendrickson Decl., ¶¶ 7 & 10.) The first

---

Plaintiff has never provided this information in a written communication to eBay as required by Section 512(c)(3).

**9.** The Court notes that even though Plaintiff failed to submit proper notice of his claim that all "Manson" in DVD format are unauthorized, since March 2001, eBay has voluntarily searched its website on a daily basis for all copies of "Manson" in DVD format, removed all such listings and suspended repeat offenders. (*See* April 13, 2001 Declaration of Michael Richter filed in support of the eBay Defendants' Opp. to Motion for Prelim. Injunction, ¶ 24.) eBay has represented to the Court that it plans to continue to take such action during the pendency of this lawsuit. (*See id.*)

**10.** Plaintiff states that during a January 2001 telephone conversation, he informed Richter that all VHS tapes labeled "new" had to be counterfeit. (Hendrickson Decl., ¶ 11.) Because Plaintiff did not provide this informa-

tion to eBay in writing, the Court need not consider the deficient notice. Nevertheless, the Court notes that Plaintiff's contention that all "new" VHS tapes must be counterfeit is wholly unsubstantiated. Perhaps Plaintiff has not authorized the release of new VHS copies in recent years. However, it is certainly possible that a seller advertises a "Manson" VHS tape as "new" because the tape remains sealed in its original package. Such a VHS tape could be an authorized copy.

**11.** The e-mail states:

Hi, Kai, this is Robert Hendrickson, the copyright owner of the motion picture MANSON. Because of the copyright infringement activity conducted by the following Ebay User Names: emailtales, luckyboyentertainment, stoonod and vidjointnyc via your website, please email me any and ALL information you have on these criminals. Thanks.
(Hendrickson Decl, Ex. G.)

listing, item number 1401275408, was the one that offered a VHS for sale by the seller "vidjointnyc@hotmail.com." (*See id.;* Richter Decl., Ex. J.) As discussed above, eBay found and removed this listing after Plaintiff sent an email complaining about this seller; this seller only had one active advertisement at the time. (*See* Richter Decl., ¶ 24.) At the time, eBay had no evidence that seller vidjointnyc@hotmail.com was engaging in infringing activity; eBay simply removed the listing out of an abundance of caution. (*See id.*) With respect to the second listing, item number 525181519, the record is not clear as to why eBay removed the listing. Plaintiff's only "evidence" concerning this listing is a single page printout from some unidentified Internet message board that contains a post submitted by an unknown user. (*See* Hendrickson Decl., ¶ 10 & Ex. J.) Plaintiff's evidence is inadmissable and his conclusion is unsubstantiated.

**12.** Plaintiff provided eBay a list of specific eBay item numbers of allegedly problematic listings on one occasion—he identified them in his March 5, 2001 written response to the eBay Defendants' request for production of documents. This discovery response predates the filing of Case No. 3. To the extent Plaintiff contends this discovery response constitutes sufficient notice of claims alleged in Case No. 3, the Court rejects Plaintiff's contention. The response was not under oath, it does not attest to a good faith belief that the items identified in the list are pirated copies of "Manson," and it does not attest to the accuracy of the allegations. Such a writing, without more, does not constitute adequate notice under Section 512(c)(3)(A).

**13.** In light of the above ruling, the Court need not address whether Plaintiff's notification satisfied the other elements set forth in Section 512(c)(3)(A), *e.g.,* whether Plaintiff notified eBay's "designated agent." However, during the hearing on this motion, Plaintiff raised a new argument involving the "designated agent" requirement. Plaintiff argued, for the first time, that eBay should not be able

In sum, the record in this case shows that proper identification under Section 512(c)(3)(A)(iii) should include the specific item numbers of the listings that are allegedly offering pirated copies of "Manson" for sale. It is undisputed that Plaintiff refused to provide specific item numbers of problematic listings before filing suit.[12] Accordingly, the Court holds that Plaintiff failed to comply substantially with Section 512(c)(3)'s identification requirement.[13]

Consequently, eBay did not have a duty to act under the third prong of the safe harbor test. *See* 17 U.S.C. § 512(c)(1)(C). Thus, if eBay establishes that it meets the remaining prongs of the safe harbor test, eBay would be entitled to judgment in its favor on the copyright claims.

**b. *The First Prong of the Test: Actual or Constructive Knowledge***

Under the DMCA, a notification from a copyright owner that fails to comply substantially with Sections 512(c)(3)(A)(ii), (iii)

to avail itself of the protections of the DMCA because its website failed to identify a "designated agent" until recently. Based on the comments made during oral argument, the Court surmises that Plaintiff's contention is premised on the belief that eBay cannot simply designate "VeRO Department" for the submission of notices of infringement; rather, eBay must identify on its website the name of an individual "agent." Because Plaintiff failed to raise this argument in his papers and failed to submit evidence in support of this argument, the Court declines to consider it. Nevertheless, the Court notes that the record shows that at all relevant times, eBay advised Plaintiff that the notices of infringement should be submitted to the attention of eBay's "VeRO Program." In its emails to Plaintiff, eBay provided a hypertext link to the notice of infringement form on eBay's website. That form identifies the address and fax number for the VeRO Program. Nothing in the DMCA mandates that service providers must designate the name of a person as opposed to a specialized department to receive notifications of claimed infringement. *See* 17 U.S.C. § 512(c)(2).

or (iv) "*shall not be considered* under [the first prong of the safe harbor test] in determining whether a service provider has actual knowledge or is aware of the facts or circumstances from which infringing activity is apparent." *See* 17 U.S.C. § 512(c)(3)(B)(i) & (ii) (emphasis added). As discussed above, Plaintiff's written notifications do not comply substantially with Section (c)(3)(A)(ii)'s adequate identification requirement. Therefore, the Court does not consider those notices when evaluating the actual or constructive knowledge prong of the safe harbor test.

eBay's evidence shows that prior to this lawsuit, it did not have actual or constructive knowledge that particular listings were being used by particular sellers to sell pirated copies of "Manson." The limited information that Plaintiff provided to eBay cannot, as a matter of law, establish actual or constructive knowledge that particular listings were involved in infringing activity. Accordingly, the Court holds that eBay has satisfied the first prong of the safe harbor test under Section 512(c). *See* 17 U.S.C. § 512(c)(1)(A).

#### c. *The Second Prong of the Test: Right and Ability to Control Infringing Activity*

■ To satisfy the second prong of the test, eBay must show that it "does not receive a financial benefit directly attributable to the infringing activity, *in a case in which the service provider has the right and ability to control such activity.*" 17 U.S.C. § 512(c)(1)(B) (emphasis added). Because the undisputed facts establish that eBay does not have the right and

ability to control the infringing activity, the Court need not evaluate the financial benefit element of this prong.

Plaintiff's *only* argument on the "ability to control" issue centers on eBay's ability to remove infringing listings (1) after it receives proper notification of infringing activity and (2) upon detecting an "apparent" infringement on its own.[14] (*See* Opp. at 7.) Plaintiff argues that the record shows eBay has the right and ability to control the infringing activity because it has removed the listings for the sale of various items in the past, including the listings offering pirated copies of "Manson" (in response to Plaintiff's complaints). Plaintiff's argument has no merit.

First, the "right and ability to control" the infringing activity, as the concept is used in the DMCA, cannot simply mean the ability of a service provider to remove or block access to materials posted on its website or stored in its system. To hold otherwise would defeat the purpose of the DMCA and render the statute internally inconsistent. The DMCA specifically requires a service provider to remove or block access to materials posted on its system when it receives notice of claimed infringement. *See* 17 U.S.C. §§ 512(c)(1)(C). The DMCA also provides that the limitations on liability *only* apply to a service provider that has "adopted and reasonably implemented . . . a policy that provides for the termination in appropriate circumstances of [users] of the service provider's system or network who are repeat infringers." *See* 17 U.S.C. § 512(i)(1)(A). Congress could not have intended for

---

**14.** In December 2000, eBay voluntarily began searching its website daily, on a limited basis, for listings that appear on their faces to be infringing—"apparent" infringements. (*See* Richter Decl., ¶ 13.) eBay conducts these searches using generic key words such as "bootleg," "pirated," "counterfeit," and "taped off TV" that may indicate potentially infringing activity. If eBay's staff determines that a seller appears to be offering infringing goods for sale, eBay would remove the listing from its website, notify the seller that the listing has been removed, refund the fees paid for that listing and review the seller's account for possible suspension. (*See id.*)

courts to hold that a service provider loses immunity under the safe harbor provision of the DMCA because it engages in acts that are specifically required by the DMCA.

Second, eBay's voluntary practice of engaging in limited monitoring of its website for "apparent" infringements under the VeRO program cannot, in and of itself, lead the Court to conclude that eBay has the right and ability to control infringing activity within the meaning of the DMCA. The legislative history shows that Congress did not intend for companies such as eBay to be penalized when they engage in voluntary efforts to combat piracy over the Internet:

> This legislation is not intended to discourage the service provider from monitoring its service for infringing material. Courts should not conclude that the service provider loses eligibility for limitations on liability under section 512 solely because it engaged in a monitoring program.

House Report 105–796 at 73 (Oct. 8, 1998).

Moreover, as Plaintiff acknowledges, the infringing activities at issue are the sale and distribution of pirated copies of "Manson" by various eBay sellers—which are consummated "offline"—and *not* the display of any infringing material on eBay's website. (Reply at 3.) Viewing the term "infringing activity" in this context, the undisputed facts demonstrate that eBay does not have the right and ability to control such activity.

Unlike a traditional auction house, eBay is not actively involved in the listing, bidding, sale and delivery of any item offered for sale on its website. eBay's evidence shows that it does not have any control over the allegedly infringing items—the pirated films. (*See* Richter Decl., ¶¶ 7, 33 & 34.) The evidence also shows that eBay never has possession of, or opportunity to inspect, such items because such items are only in the possession of the seller. (*See id.*) When auctions end, eBay's system automatically sends an email to the high bidder and the seller identifying each other as such. (*See id.* at ¶ 7.) After that, all arrangements to consummate the transaction are made directly between the buyer and seller. (*See id.*) eBay has no involvement in the final exchange and generally has no knowledge whether a sale is actually completed (*i.e.*, whether payment exchanges hands and the goods are delivered). (*See id.*) If an item is sold, it passes directly from the seller to the buyer without eBay's involvement. (*See id.*) eBay makes money through the collection of an "insertion fee" for each listing and a "final value fee" based on a percentage of the highest bid amount at the end of the auction. (*See id.* at ¶ 8.)

Plaintiff offers no evidence that establishes the existence of a triable issue of fact on the "ability to control the infringing activity" issue. Accordingly, the Court hold that the record shows that eBay does not have the right and ability to control the infringing activity at issue.

Because eBay has established that it meets the test for safe harbor under Section 512(c), eBay is entitled to summary judgment in its favor on the copyright claims.

## C. Plaintiff's Copyright Claims Against Richter and Whitman

■ The copyright claims against eBay's employees, Richter and Whitman, are based solely on alleged acts and omissions committed in the course and scope of their employment with eBay. Consequently, eBay's immunity from liability for copyright infringement should also extend to Defendants Richter and Whitman. To hold that the safe harbor provision of the DMCA protects the company but not its employees for the same alleged bad acts

would produce an absurd result. Congress could not have intended to shift the target of infringement actions from the Internet service providers to their employees when it enacted the safe harbor provisions. Accordingly, the Court holds that Richter and Whitman are also entitled to summary judgment in their favor.

## D. Plaintiff's Lanham Act Claim Against eBay and Richter

In Case No. 3, Plaintiff alleges that eBay, Richter and over a dozen third party sellers violated his rights under the Lanham Act, 15 U.S.C. § 1125. This claim is premised on a "printer-publisher" liability for trademark/trade dress infringement. The Court recently held that eBay and Defendant Richter would be "innocent infringers" within the meaning of 15 U.S.C. § 1114(2) even if Plaintiff were to establish infringement. *See* July 3, 2001 Order at 17. The Court reached this ruling in part because the undisputed facts showed that eBay had no knowledge of a potential trade dress violation before Plaintiff filed suit. *See id.* Because eBay and Richter are "innocent infringers," Plaintiff's remedy is limited to an injunction against the future publication or transmission of the infringing advertisements on eBay's website. *See* 15 U.S.C. § 1114(2)(B).

Now, eBay argues that Plaintiff's need for such an injunction has been obviated because eBay has stopped running all the advertisements claimed to be infringing and it has no intention of running the identified advertisements in the future. *See, e.g., Brown v. Armstrong,* 957 F.Supp. 1293, 1303 n. 8 (D.Mass.1997) (Lanham Act false advertisement claim for injunctive relief based on false statements in an infomercial was moot where the infomercial had stopped running and there were no plans to air it in the future); *Stephen W. Boney, Inc. v. Boney Servs., Inc.,* 127 F.3d 821, 827 (9th Cir.1997) (grocery store operator's claim for declaratory judgment that it

had priority in use of trade name was moot where the competitor had announced that it would rename its stores). eBay's evidence shows that it has removed from its website the allegedly false and misleading advertisements identified by Plaintiff. (*See* Richter Decl., ¶¶ 38–44.) Plaintiff has offered no evidence that contradicts this showing.

Rather, Plaintiff argues that he is entitled to an injunction that restrains eBay "from *any* further displaying and or transmitting of *any* false and or misleading advertisements in connection with the sale/distribution of 'counterfeit' MANSON DVD's via its websites." (Opp. at 11 (emphasis added).) In short, Plaintiff seeks an injunction enjoining any and all false and/or misleading advertisements that may be posted on eBay's website by users in the future, regardless of whether they are the basis of this lawsuit and whether they have been identified by Plaintiff.

No authority supports Plaintiff's position. Indeed, such an injunction would effectively require eBay to monitor the millions of new advertisements posted on its website each day and determine, on its own, which of those advertisements infringe Plaintiff's Lanham Act rights. As the Court previously noted, "no law currently imposes an affirmative duty on companies such as eBay to engage in such monitoring." July 3, 2001 Order at 15. Further, the Court's recent "innocent infringer" ruling was premised on the Court's determination that eBay has no affirmative duty to monitor its own website for potential trade dress violation and Plaintiff had failed to put eBay on notice that particular advertisements violated his Lanham Act rights before filing suit. The Court holds that Plaintiff is not entitled to the remedy that he seeks. The undisputed facts show that Plaintiff's Lanham Act claim for injunctive relief is moot.

## IV. DISPOSITION

Because no triable issues· of material fact exist with respect to the eBay Defendants' entitlement to immunity under the DMCA, the Court hereby GRANTS the eBay Defendants' motion for summary judgment on the copyright claims. Additionally, because the undisputed facts establish that Plaintiff's Lanham Act claim is now moot, the Court hereby GRANTS eBay and Richter's motion for summary judgment on the Lanham Act claim.

IT IS SO ORDERED.