The Honorable Jim Luker State Senator Post Office Box 216 Wynne, Arkansas 72396-0216
Dear Senator Luker:
 I am writing in response to your request for an opinion on three questions regarding the "Auctioneer's Licensing Act" and whether that law "requires regulation of consignment stores that list items on eBay or similar online marketplaces for consumers." You recite the following information and pose three questions related to this information:
 eBay is an online internet marketplace for the sale of goods and services by individuals. Globally, eBay has over 135 million registered users, most of whom only purchase items. In the United States, over 430,000 individuals earn a substantial portion or all of their income selling on eBay. eBay was founded in 1995 and is located in San Jose, California, and the servers and routers that handle all of eBay's transactions are also located in that state.
 The eBay format allows a seller to list goods for sale on eBay for a designated period of time. The item may be listed at a set price (as is the case in roughly one-third of eBay transactions), or may be listed and sold to the buyer who agrees to pay the most in that period of time. A seller can also set a minimum price that he will accept for the goods. eBay does not formally police the use of its marketplace, other than enforcing the policies and terms set forth in its User Agreement, but it does facilitate trust by soliciting "feedback" for each buyer and seller. All feedback comments and ratings are posted publicly to allow each participant to decide for themselves whether or not to conduct a transaction.
 * * *
 Since many people do not have the requisite computer skills or confidence, are uncomfortable attempting to sell their goods on eBay, or simply do not have the time to sell online, a service industry has evolved that assists such parties in placing their goods on eBay or other internet market venues. These are known variously as "online consignment stores" or "eBay drop off stores" and eBay has created a special designation for these selling assistants or agents: "Trading Posts" or "Trading Assistants" (hereinafter collectively referred to as "businesses") who help people sell their goods on eBay. There are many of these businesses located throughout Arkansas, including 17 within ten miles of the State Capitol, and over 300 within a 100-mile radius of Little Rock. National franchise systems have also arisen, including one with locations in Arkansas named "Snappy Auctions," which advertises "drop off your stuff and we will sell it on eBay."
 These trading agents, which are most like a consignment shop, charge a fee for their various services, taking temporary possession of the consignor's goods (but as a bailment, so that legal title does not pass), photographing and writing a compelling description of the item, uploading the digital pictures onto eBay's servers, answering e-mailed questions posed by potential buyers and sent via eBay's system, collecting the sales price if a sale is negotiated, packaging and shipping the goods to the buyer, and remitting the sales price, less the agreed fee, to the consignor of the goods.
 * * *
 The owner of the property dictates the minimum price acceptable, the initial asking price for the goods, and the length of time the goods will be listed on the internet site. The business pays eBay to list the goods on its site. At all times the goods remain the property of the owner and the business never takes title to the property, but only acts as an agent for the owner of the goods.
 Based upon the facts stated above, I request an official opinion to the following questions:
 1) Whether a business, individual, or individual acting as a trading assistant who aids an owner of goods listing his goods for sale on eBay is required by the Arkansas Auctioneers Act, A.C.A. § 17-17-101
et seq., to obtain a license as an "auction house," and
 2) Does the presence of the word "auction" in an online consignment store require that entity to obtain an auctioneer's license, even if it would not otherwise be deemed to be holding auctions?
 3) Does the presence of the word "auction" in a trademarked business name constitute "holding oneself out as an auctioneer" even if it would not otherwise be deemed to be holding auctions?
RESPONSE
It is my understanding that the Arkansas Auctioneers Licensing Board takes the position that an "auction house" license is required under the circumstances you describe. As an entity charged with administration of the applicable statutes, its interpretation will be upheld unless "clearly wrong." I cannot state, in response to your first question, that the Board's determination in this regard is "clearly wrong." In my opinion therefore, the answer to your first question is "yes." If this state of the law fails to take into account the distinct nature of internet "trading assistants," as opposed to the more traditional activities conducted in conjunction with live auctions, the Arkansas General Assembly, and to the extent authorized, the Arkansas Auctioneers Licensing Board may, respectively, amend the applicable laws and regulations governing these activities. In response to your second question, the answer will depend upon the facts surrounding the inclusion of the word "auction" "in an on-line consignment store." The applicable inquiry is whether the inclusion of such word would constitute advertising to act as a auctioneer or assuming to act as an auctioneer under A.C.A. § 17-17-105(a). I am not empowered as a fact-finder in the issuance of official Attorney General opinions, and as a consequence cannot resolve this issue. In response to your third question, again the issue may depend upon the particular facts.
Question 1 — Whether a business, individual, or individualacting as a trading assistant who aids an owner of goods listinghis goods for sale on eBay is required by the ArkansasAuctioneers Act, A.C.A. § 17-17-101 et seq., to obtain a licenseas an "auction house. . . ."
The applicable subchapters, as you indicate, are A.C.A. §§17-17-101 to -409 (Repl. 2001 and Supp. 2005). Section17-17-103(1) defines an "auctioneer" as follows:
"Auctioneer" means any person who, for a fee, commission, or any other valuable consideration, or with the intention or expectation of receiving the same, by the means of, or processof, an auction or sale at auction, offers, negotiates, orattempts to negotiate, a listing contract, sale, purchase, orexchange of goods, chattels, merchandise, or personal property, or of any other commodity which may lawfully be kept or offered for sale by or at public auction.
(Emphasis added).
Section 17-17-104 contains a number of exceptions to which the chapter is inapplicable (exceptions which are not relevant here), including the circumstance where an "individual . . . offers his or her own goods for auction. . . ." The applicable Rules of the Arkansas Auctioneer Licensing Board state that: "[c]onsignment goods are not considered one's `own goods.'" See Arkansas Auctioneer Licensing Board Rules and Regulations, effective July 17, 2005 at § 7.2.
Section 17-17-105 states that:
 (a) On and after July 1, 1989, it shall be unlawful for any person to act as an auctioneer or to advertise or to assume to act as either within this state without a license issued by the Auctioneer's Licensing Board.
 (b) Any person who violates subsection (a) of this section shall be punished by a fine of not less than one hundred dollars ($100) nor more than five hundred dollars ($500), or by imprisonment for a term not to exceed ninety (90) days, or both.
(Emphasis added).
As an initial matter, it must be noted that, according to my understanding, the Auctioneer's Licensing Board interprets the applicable subchapters as requiring it to regulate the activity you describe. This fact is important because it is generally held that the interpretation placed on a statute or regulation by an agency or department charged with its administration is entitled to great deference and should not be overturned unless clearly wrong. See Ark. Soil, Water Conserv. v. City of Bentonville,351 Ark. 289, 92 S.W.3d 47 (2002); Cave City Nursing Home, Inc.v. Arkansas DHS, 351 Ark. 13, 89 S.W.3d 884 (2002); and Cyphersv. United Parcel Service, 68 Ark. App. 62, 3 S.W.3d 698 (1999). It is my understanding that the Board has determined that the activities of the trading assistant you describe fall within the regulatory power of the Board to regulate "auctioneers" and that the appropriate licensure category is that of "auction house."See A.C.A. § 17-17-307(a) (stating that "[i]f an auction owner is one other than the principal auctioneer, the auction owner shall apply for a license and meet all the provisions of this chapter). See also (A.C.A. § 17-17-310) (requiring each and every advertisement by an auctioneer or consignment auction house to include the number of the license issued to the auctioneer or auction company). The primary difference in the two types of licensure ("auctioneer" and "auction house"), is that while the former type of licensees are required to take and pass both oral and written exams, the latter type of licensees are subject only to the written exam. See Rules and Regulations of the Auctioneers Licensing Board § 9.4. See also Rule 9.6 (stating that an "auction house license shall be issued in the name of one person only").
The relevant inquiry is therefore whether the Board's interpretation that the activity you describe falls within its regulatory authority over "auctioneers" or "auction houses" is "clearly wrong." It is necessary to scrutinize the definition of "auctioneer" above to determine whether the activities you describe meet the definition. The words "auction house" and "auction" are not defined in the subchapter.
The definition of "auctioneer" includes at least three elements: 1) the acceptance of a fee; by a person who 2) "by the means of, or process of, an auction or sale at auction" 3) "offers, negotiates, or attempts to negotiate, a listing contract, sale, purchase, or exchange of goods. . . ."
As an initial matter, it is clear that the trading assistant accepts a fee for his service. You have stated that "trading agents, which are most like a consignment shop, charge a fee for their various services. . . ." The first element is therefore met.
In my opinion it will be helpful to address the third element next. The question under the third element is whether the trading assistant "offers, negotiates, or attempts to negotiate, a
listing contract, sale, purchase, or exchange of goods." (Emphasis added.) It appears that, under the facts you recite, this element is met as well. You have stated that the trading assistants "photograph and writ[e] a compelling description of the item, upload the digital pictures onto eBay's servers, answer e-mailed questions posed by potential buyers and sent via eBay's system, collect the sales price if a sale isnegotiated, package[e] and ship the goods to the buyer, and remit the sales price, less the agreed fee, to the consignor of the goods." (Emphasis added). These facts indicate an "offer" by the trading assistant and the "negotiation" of a sale.
The final element is that the activity be by "means of or process of, an auction or sale at auction." The word "auction" is not defined in A.C.A. §§ 17-17-101 to -409. I have not found any applicable definition of the word "auction" in Arkansas statutes or case law. That being the case, resort to the common meaning of the word is appropriate. See Ghegan v. Weiss, 338 Ark. 9,991 S.W.2d 536 (1999) (in the absence of an ambiguity in statutory language, the words of a statute should be given their common meanings). The word "auction" is generally defined as a "publicly held sale at which property or goods are sold to the highest bidder." Random House Webster's Unabridged Dictionary, (2nd
Ed. 2001) at 135.
The question in this regard is whether the Auctioneers Licensing Board is "clearly wrong" in conclusion that the "means of or process of" eBay's internet site falls within this definition.
You have stated in this regard that: "While these eBay transactions are sometimes referred to as "auctions," there are fundamental differences between the traditional regulated auctions and the transactions that occur on the eBay platform. eBay sellers perform functions distinct and not equivalent to those of traditional auctioneers: no auctioneer recruits, solicits or encourages bidders to participate; there is a set ending time rather than having an auctioneer declare an auction's close. Traditional auctioneers must keep an auction open as long as there are willing bidders." You also state that "[t]hese activities by the trading agent do not constitute auctioneering. No auction is conducted on their premises, nor within this state, as defined in A.C.A. § 4-2-328."[1]
In contrast, at least one federal court has stated the following regarding the status of the operation conducted by eBay:
 In this case, eBay repeatedly characterizes its website as merely an online venue that publishes "electronic classified ads." (See, e.g., Motion at 3.) However, eBay's description grossly oversimplifies the nature of eBay's business. A review of eBay's website shows eBay operates far more than a sophisticated online classified service. . . . Indeed, eBay's website is known first and foremost as an Internet auction website. See, e.g., Leslie Walker, Ebay Goes Off-Line To Train Its Next Block of Dealers, Wash. Post, Aug. 9, 2001, available at
2001 WL 23185584 ("eBay, the giant Internet auction house"); Pradnya Joshi Charles V. Zehren, Bidders' Remorse Online Auctions Now No. 1 Source of Internet Fraud, Newsday, Aug. 30, 2000, available at 2000 WL 10031214 ("eBay, the world's largest online auction service"). eBay's own website describes itself as "the world's largest online marketplace." See "Overview" page, at http://pages.ebay.com/community/aboutebay/overview/index.html.
eBay "enables trade on a local, national and international basis" and "features a variety of . . . sites, categories and services that aim to provide users with the necessary tools for efficient online trading in the auction-style and fixed price formats." Id. eBay's Internet business features elements of both traditional swap meets — where sellers pay for use of space to display their goods — and traditional auction houses — where goods are sold via the highest bid process.
Hendrickson v. eBay, Inc., 165 F.Supp.2d 1082, 1084 (C.D. Cal. 2001) (emphasis original). The court made this conclusion despite its finding that "[u]nlike a traditional auction house, eBay is not actively involved in the listing, bidding, sale and delivery of any item offered for sale on its website." Id. at 1094.[2] See also, NuMarkets, LLC v. Boyd, Not Reported in F.Supp.2d, 2004 WL 3327267 (E.D.Tenn) (holding that similar eBay "trading assistant" corporation faced "substantial legal hurdle" in proving its likelihood of success on the merits in its request for a preliminary injunction for violation of non-competition clause in franchise agreement because it was not licensed under Tennessee's auctioneer statute, stating that, under statute requiring licensure of "[a]ny person in this state who for a fee is in the business of managing auctions to the extent such person is responsible for the advertising, consignments, promotion and/or distribution of funds," NuMarkets was required by the literal wording to have a state license).
I cannot state, therefore, that the Auctioneer's Licensing Board is clearly wrong in concluding that the actions of a "trading assistant" such as you describe, involve the "means of or process of, an auction or sale at auction." It is not necessary, as you argue, under the statutory definition of an "auctioneer" at A.C.A. § 17-17-103(1), that the "auction" be conducted on the premises of the licensee, or within the State of Arkansas. This element of the current definition only requires that the activity be conducted "by means of or process of, an auction or sale at auction."
If this state of the law fails to take into account the distinct nature of internet "trading assistants," as opposed to the more traditional activities conducted in conjunction with live auctions, the Arkansas General Assembly, and to the extent authorized, the Arkansas Auctioneers Licensing Board may, respectively, amend the applicable laws and regulations governing these activities.
Question 2 — Does the presence of the word "auction" in anonline consignment store require that entity to obtain anauctioneer's license, even if it would not otherwise be deemed tobe holding auctions?
I must note in response to this question that I have concluded above that the Board is not clearly wrong in classifying the activities you describe as falling within the definition of an "auctioneer." The applicable determination under that statutory definition has been discussed above and is not whether the entity would be deemed to be "holding auctions." It appears, therefore, that your second question may be moot in light of my conclusions above. In any event, the answer to this question would require reference to the factual backdrop surrounding the activity. The applicable inquiry is whether the inclusion of such word would constitute "advertis[ing] or . . . assum[ing] to act" as an auctioneer under A.C.A. § 17-17-105(a). I am not empowered as a fact-finder in the issuance of official Attorney General opinions, and as a consequence cannot resolve this issue.
Question 3 — Does the presence of the word "auction" in atrademarked business name constitute "holding oneself out as anauctioneer" even if it would not otherwise be deemed to beholding auctions?
See response to Question 2, above.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] Section 4-2-328 is a statute in one of the Uniform Commercial Code subchapters governing "Sales." It does not purport to define the word "auction." In addition, another statute in the Chapter makes clear that the scope of the chapter governing "Sales" is not intended to "impair or repeal any statute regulating sales to consumers, farmers or other specified classes of buyers." A.C.A. § 4-2-102 (Repl. 2001).
[2] This conclusion does not suggest, however, that eBay itself is subject to regulation by the Arkansas Auctioneers Licensing Board. You have not posed that question and legal issues would arise in that context as to whether eBay itself "offers, negotiates, or attempts to negotiate, a listing contract, sale, purchase, or exchange of goods . . ." for purposes of A.C.A. §17-17-103(1).